**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

HESS MECHANICAL CORPORATION,
Petitioner,

v.                                            No. 96-1538

NATIONAL LABOR RELATIONS BOARD,
Respondent.

On Petition for Review of an Order
of the National Labor Relations Board.
(5-CA-24162)

Argued: March 7, 1997

Decided: April 21, 1997

Before WILKINSON, Chief Judge, and RUSSELL and HALL,
Circuit Judges.

_____

Reversed and remanded by published opinion. Chief Judge Wilkinson
wrote the opinion, in which Judge Russell and Judge Hall joined.

_____

**COUNSEL**

**ARGUED:** Maurice Baskin, VENABLE, BAETJER, HOWARD &
CIVILETTI, L.L.P., Washington, D.C., for Petitioner. Nancy Kessler
Platt, NATIONAL LABOR RELATIONS BOARD, Washington,
D.C., for Respondent. **ON BRIEF:** John C. Hardwick, Jr., VEN-
ABLE, BAETJER, HOWARD & CIVILETTI, L.L.P., Washington,
D.C., for Petitioner. Frederick L. Feinstein, General Counsel, Linda
Sher, Associate General Counsel, Margery E. Lieber, Assistant Gen-

eral Counsel for Special Litigation, Abby Propis Simms, Supervisory Attorney, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Respondent.

_____

**OPINION**

WILKINSON, Chief Judge:

On March 8, 1994, the Region 5 Director of the National Labor Relations Board issued a complaint on behalf of the Board's General Counsel against Hess Mechanical Corporation. The complaint alleged that Hess had violated sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) & (3), by telling employee Richard Darr not to talk about the union to which he belonged and by terminating him for engaging in union activities.

Hess prevailed on the merits of the case, but its request for attorney's fees and expenses pursuant to the Equal Access to Justice Act (EAJA), 5 U.S.C. § 504, was denied by the Board. Hess appeals the denial, contending that the General Counsel's legal position was not "substantially justified." We agree. The General Counsel's case is notable for its flimsiness. The evidence at the time the complaint was filed indicated that Hess fired Darr for one reason only -- poor performance. Accordingly, we set aside the Board's denial of fees and remand to the Board for the determination of an appropriate fee award to Hess.

I.

Richard Darr is a member of the Sheet Metal Workers' International Association (the union). Hess Mechanical Corporation is a non-union construction contractor. In November 1993, Hess hired Darr and Ken Burk, another union member, to work on a project at the National Institutes of Health. The company hired both men with full knowledge of their long-term union membership. When Darr began work, he received a copy of Hess' employment policy, which states that new hires are subject to a 90-day probation period during which they will be fired if they "do not have the ability to perform the work or show a lack of interest or motivation."

2

Only two days after Darr began work, John Blotner, Darr's foreman, began receiving complaints that Darr was not properly performing his duties and was not getting along with co-workers. In response to these complaints, Blotner reassigned Darr several times to different tasks. Each reassignment was followed by further complaints about Darr's bad attitude, his poor productivity, and his adverse impact on the productivity of other employees. Both Blotner and Russell Long, the project superintendent, personally observed Darr's failure to produce. Blotner noted that Darr was installing approximately half the amount of air duct that other workers were hanging under the same working conditions.

On December 3, 1993, Blotner and Long gave Darr a verbal warning about his unacceptable performance. Even after a second verbal warning, co-workers continued to complain about Darr's work. Consequently, on December 17, 1993 Long provided Darr with a written warning which stated, "John Blotner and myself have spoke[n] to Richard on more than one occasion about his productivity. I have also received complaints from other lead mechanics about the same problem. This kind of substandard work will not be tolerated." Although advised that he was free to disagree with the warning statement, Darr checked and signed the box on the warning indicating that he agreed with it. Darr's performance failed to improve, and on January 5, 1994, he was fired. The written termination notice indicates that he was fired for poor performance after previous warnings.

On January 18, 1994, the union filed an unfair labor practice charge with the NLRB, claiming that Hess had fired Darr for engaging in union activities. Darr supplied the Board with an affidavit in which he claimed that he had talked to co-workers about the union and had given several employees union cards to sign. Darr further alleged that Blotner twice told him not to talk about the union and that Long informed him that he was being fired for discussing the union with other employees.

Hess submitted a statement denying any knowledge of Darr's alleged union activities and stating that Darr was terminated solely for substandard performance. Hess attached to the statement a copy of the written warning Darr had signed. At the Board's request, the company also provided a list of thirty-five employees discharged in 1993 for

3

performance-related reasons. In addition, the Board and Hess each took affidavits from six employees which corroborated Darr's poor job performance. The employees generally indicated that they were unaware of any union activity; only two were able to state that they had heard Darr talk about the union.

On March 8, 1994, the Region 5 Director filed a complaint on behalf of the Board's General Counsel. The complaint asserted that Hess had violated sections 8(a)(1) and 8(a)(3) of the National Labor Relations Act by instructing Darr not to speak with employees about the union and by firing him for union activities. After a one-day hearing, an administrative law judge recommended that the complaint be dismissed in its entirety. Reviewing the litany of complaints about Darr's work and his failure to improve despite several warnings, the ALJ concluded that Hess had terminated Darr for substandard performance "in strict accordance with valid, established company policy." The ALJ found that the only evidence that Darr had engaged in or was fired for union activity was Darr's own uncorroborated testimony. The ALJ also noted that while Burk testified that he spent 80 percent of his work day openly discussing the union with other employees, he was never subjected to any adverse company action.

The General Counsel filed no exceptions to the ALJ's decision, which the Board affirmed. Hess then applied for attorney's fees and costs pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504, contending that the General Counsel's position was not "substantially justified" because Darr's claims were uncorroborated and the pre-complaint evidence demonstrated that Darr was fired for poor performance rather than union activity. A second ALJ denied the request, concluding that the case depended on credibility determinations that could be resolved only after a hearing. The Board affirmed, and Hess appeals.

II.

Under the EAJA, a prevailing party in an adjudication before a federal agency is entitled to attorney's fees and costs unless "the position of the agency was substantially justified or [ ] special circumstances make an award unjust." 5 U.S.C. § 504(a)(1). The test for substantial justification is one of reasonableness -- did the agency's position

4

have a "reasonable basis both in law and fact," or was it "justified to a degree that could satisfy a reasonable person." Pierce v. Underwood, 487 U.S. 552, 565 (1988). This standard allows the government some leeway in litigation without permitting it to adopt positions arbitrarily. The government has the burden of proving substantial justification, Tyler Business Services v. NLRB, 695 F.2d 73, 75 (4th Cir. 1982), but a Board decision regarding an EAJA award is entitled to deference if it is based upon substantial evidence, 5 U.S.C. § 504(c)(2).

In a suit alleging retaliation for union activity, the General Counsel has the burden of proving that the adverse action was based, in whole or in part, on anti-union animus. NLRB v. Transportation Management Corp., 462 U.S. 393, 401-02 (1983) (adopting analytic framework of the NLRB in Wright Line, 251 N.L.R.B. 1083 (1980)). Even if the General Counsel sustains his burden of proof, the employer can avoid liability by demonstrating that it would have taken the same action regardless of any improper motive. Id.

A.

The Board first argues that the General Counsel acted reasonably in issuing the complaint because the case could not have been resolved without the ALJ's determination as to Darr's credibility. "The General Counsel was . . . substantially justified in proceeding with the case through issuance of the ALJ's decision. No evidence was produced at the hearing which sufficiently established the Employer's defense without the need for any credibility resolutions to be made."

We disagree. We are hard pressed to determine how the ALJ could have credited Darr's testimony in the face of overwhelming evidence that Hess harbored no anti-union animus and had fired Darr solely for poor performance. Hess hired Darr and Burk with full knowledge of their long-standing union membership. Burk testified that he spent 80 percent of his work day openly organizing, yet he admits that Hess never took action against him as a result. The best and only evidence the Board can find to corroborate Darr's testimony is isolated statements in two employee affidavits which suggest that Darr spoke with some employees about the union. Although the Board now relies on

5

these statements, the Board's own estimate of their probative value is clear from its failure to introduce them at the hearing. However, even assuming Darr did conduct union activity, his testimony was still the only evidence that Hess either was aware of the alleged activity or fired Darr because of it.

Undisputed evidence established that Darr's performance was inadequate and that his discharge was entirely in accordance with valid company policy. The record is replete with statements from Darr's co-workers criticizing his poor work habits. One stated that Darr "seemed not to care about his work" and "didn't do a good job." Others voiced similar concerns. "There was a lot of complaints about the work wasn't getting done fast enough" because of Darr; he "was holding up the work." "People still complained after several warnings." "Richard has the attitude like an `I don't care' attitude. . . . We like to do our work, and we like to take pride in our work. Of course, we have to get our work done. This wasn't happening." Illustrating Darr's poor productivity, Blotner testified:

> [F]or example, we had teams working on the floor. And you have two guys, let's say they are hanging six VAV boxes and the trunk lines in a day and you got somebody doing half of that work under the same conditions. There is really no reason for that. There is going to be a slight difference in there because something might be in the way of somebody, but that is not acceptable to hang half of the amount under the same conditions that the other guys are working.

In short, Darr simply was not pulling his own weight. The employment policy which Darr received stated that new employees who did not perform adequately would be fired. Furthermore, Darr himself acknowledged in writing that he had been warned about his lack of productivity more than once. Despite the warnings, Darr's performance never improved. The General Counsel never disputed Darr's substandard productivity, the warnings he received, or Hess' established employment policy. In light of this record, we do not see how the ALJ could have accepted Darr's testimony that he was fired for union activities. Even if Darr's testimony had been fully credited, Hess could not have been held liable because the undisputed evidence

6

abundantly demonstrated that Hess would have fired Darr regardless of any anti-union sentiment.

B.

The Board further asserts that the pre-complaint evidence supporting Hess was insufficient to warrant dismissal of the unfair labor practice charge. "[P]rior to issuance of[the] Complaint, the General Counsel was left with conflicting evidence about the extent of Darr's organizing activities, and with less than conclusive evidence about the Employer's proffered reason for the discharge."

To the contrary, the weakness of the General Counsel's case was obvious even before the complaint was filed. Darr's affidavit was the only pre-complaint evidence that Hess was aware of Darr's alleged union activities or that the company fired him because of those activities. The General Counsel also faced uncontroverted evidence which supported Hess' defense. The written warning signed by Darr, the list of employees terminated due to poor performance, and the employee affidavits establishing Darr's lack of productivity indicated that Hess would have fired Darr in any event, and the General Counsel had no evidence to suggest otherwise.

The Board's assertion that the pre-complaint evidence was not "conclusive" misses the mark. The point is that the relevant evidence before the General Counsel was substantial, and all of it indicated that Hess had a valid defense. Under such circumstances, no reasonable party would have proceeded with the complaint without further investigation to ensure that the defense could be challenged. The record is devoid of any indication, for example, that the General Counsel ever questioned Darr regarding his poor performance or verified Darr's claim that he gave union cards to several workers. Additional inquiry in this case, of course, would have uncovered only mounting evidence favoring Hess. The EAJA does not tell an agency how to handle a case, but the General Counsel cannot decline to conduct further inquiry and then plead his own failure to investigate as reason to conclude that his position was substantially justified.

In sum, we cannot find substantial evidence in the record to support the Board's determination that the General Counsel was substantially

7

justified in filing the complaint against Hess. Given the deference due the Board and the significance of its statutory mission, we do not casually intervene in a collateral dispute over fees and costs. We also do not think that the government's loss of a case routinely means that its position was substantially unjustified. As exemplified in the EAJA and Fed. R. Civ. P. 11, however, the processes of litigation presuppose some reasonable investigation before the filing of a complaint. As the Supreme Court has noted in the context of Rule 11, "[b]aseless filing puts the machinery of justice in motion, burdening courts and individuals alike with needless expense and delay. Even if the careless litigant quickly dismisses the action, the harm. . . has already occurred." Cooter & Gell v. Hartmarx Corp. , 496 U.S. 384, 398 (1990).

In this case, the General Counsel went forward with a complaint on the basis of a single, uncorroborated affidavit and in the face of a wall of adverse evidence. In a civil action with a similar record, this would border on conduct sanctionable under Rule 11. It certainly cannot meet the higher standard imposed by Pierce v. Underwood, where the Court explicitly warned that "[t]o be`substantially justified' means, of course, more than merely undeserving of sanctions for frivolousness." Pierce, 487 U.S. at 566. Finally, we note that the failure of courts to enforce the EAJA would only benefit parties who seek to drive up company costs by forcing them to defend against meritless unfair labor practice charges. To hold this complaint "substantially justified" would condone the conversion of Board processes into a mechanism of harassment.

III.

For the foregoing reasons, we set aside the Board's denial of fees and remand to the Board for the determination of an appropriate fee award to Hess.

REVERSED AND REMANDED

8