**CAREMORE, INC., d/b/a Altercare of Hartville, Petitioner/Cross–Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent/Cross–Petitioner.**

Nos. 96–6114, 96–6228.

United States Court of Appeals, Sixth Circuit.

Aug. 10, 1998.

Gary W. Dubin, Dubin, Joseph & Shagrin, Cleveland, OH, for Petitioner/Cross–Respondent.

David B. Schwartz, National Labor Relations Board, Office of the General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, National Labor Relations Board, Appellate Court Branch, Margaret Ann Gaines–Neigus, National Labor Relations board, Eric G. Moskowitz, Margery E. Lieber, D. Criss Parker, National Labor Relations board, Special Litigation Branch, Washington, DC, for Respondent/Cross–Petitioner.

Before: NELSON, BOGGS, and COLE, Circuit Judges.

## ORDER

BOGGS, Circuit Judge.

In *Caremore, Inc. v. NLRB,* 129 F.3d 365 (6th Cir.1997), we vacated a decision of the National Labor Relations Board ("NLRB") ordering petitioner/cross-respondent Caremore, Inc. ("Caremore"), to bargain with a unit of employees that included licensed practical nurses. In doing so, we noted that the NLRB's order was directly contrary to four prior cases of this court holding in factu-

ally analogous circumstances that nurses were "supervisors" as that term is used in Section 2(11) of the National Labor Relations Act, 29 U.S.C. 152(11). Because of what we perceived as the NLRB's consistent refusal to accept the authority of our precedents—a perception strengthened by several subsequent cases [1]—we invited Caremore to apply for attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"), 5 U.S.C. § 504 and 28 U.S.C. § 2412. *See Caremore,* 129 F.3d at 371.

Caremore has now applied for $38,612.00 in attorney's fees and $4650.66 in costs. Under the EAJA, prevailing "parties" (as that term is statutorily defined) are entitled to recover their litigation costs and, subject to a statutory maximum, their attorney's fees, unless the government can show that its position was substantially justified or that special circumstances make an award unjust. *See* 28 U.S.C. § 2412(d)(1)(A). Wisely, the NLRB does not argue that its position in the underlying *Caremore* litigation was substantially justified; as we stated in our opinion on the merits, "this is not a close case." *Caremore,* 129 F.3d at 370. The NLRB's only arguments in opposition to Caremore's EAJA application are that Caremore is not a "party" covered by the EAJA, and that Caremore has not adequately substantiated the amount of fees and costs claimed. We address each argument in turn.

<span style="background:black">    </span> Under the EAJA:

"party" means (i) an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed, or (ii) any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed....

28 U.S.C. § 2412(d)(2)(B). In support of its application, Caremore has submitted affidavits (and supporting documents) stating that Caremore is an Ohio corporation that both

---

1. *See, e.g., Grancare, Inc. v. NLRB,* 137 F.3d 372 (6th Cir.1998); *Edgewood Nursing Center v.* *NLRB,* 142 F.3d 433 (6th Cir.1998).

had a net worth of less than $7 million and had fewer than 500 employees at the time the NLRB commenced administrative proceedings against Caremore and at all subsequent times. In response, the NLRB has proffered documents showing that Caremore is controlled by Gerald Schroer, who also controls several other nursing homes through his ownership of a common corporate parent. The NLRB asks us to hold that the EAJA requires aggregation of affiliated entities for purposes of determining whether a company meets the statutory definition of "party"; according to the NLRB, if we count the net worth and employees of all of Caremore's affiliated companies, then Caremore is ineligible for recovery.

The NLRB correctly argues that, at least in certain limited contexts, we have held that net worth and employees must be aggregated for EAJA purposes. *See National Truck Equip. Ass'n v. NHTSA,* 972 F.2d 669 (6th Cir.1992). Contrary to the NLRB's assertion, however, we have never read the EAJA to include a general aggregation requirement; on the contrary, we have expressly recognized that the EAJA is silent as to the aggregation issue except with respect to certain entities not relevant here. *See id.* at 674. In *National Truck,* we held that a trade association, which itself had only 12 employees and a net worth of less than $850,-000, was ineligible for recovery under the EAJA in view of the fact that its constituent members included many of the largest corporations in the Fortune 500. *See id.* at 671. Our rationale, however, was not that the trade association was supported by a large membership and therefore simply was too big for EAJA recovery; instead, we rested our holding on the fact that the association was participating in the litigation on behalf of

its members, rather than on its own behalf, and aggregation of the members' finances and employees reflected this fact. *See id.* at 672. Here, Caremore clearly was litigating on its own behalf; the record demonstrates that it is a separately incorporated entity, and that the merits of the underlying case involved a bargaining unit consisting solely of Caremore employees. Moreover, Caremore has submitted a roster of employees that work only at Caremore (under the trade name Altercare of Hartville), and the legal bills in this matter were submitted to Altercare of Hartville. We have no reason to believe that Caremore was litigating on behalf of any other entity, and we therefore decline to aggregate the net worth or employees of any affiliated entities for purposes of determining Caremore's eligibility for fees and costs. *See id.* at 673 ("[w]hen a proceeding involves [an entity] independent of its [affiliates], the [entity's] eligibility should be measured individually"); *cf. Texas Food Indus. Assoc. v. USDA,* 81 F.3d 578, 582 (5th Cir.1996) ("we find it unlikely that Congress intended an implicit aggregation rule to apply to [partnerships, corporations, and units of local government]").[2]

It remains only to decide whether the amount of fees and costs requested by Caremore is permissible under the EAJA. The NLRB does not contest the amount of costs requested, and we therefore hold that Caremore is entitled to recover $4650.66 in costs. We are more troubled by the amount of attorney's fees requested by Caremore. Caremore states that the amount of attorney's fees requested is based on a "maximum hourly rate" of $150 per hour.[3] This hourly rate exceeds the statutory cap on attorney's

---

**2.** While we agree with the NLRB that one of the rationales of the EAJA is to permit small companies to defend themselves against unjustified government action without fear that doing so will break them financially, we do not believe that is the statute's only animating purpose. There is also a significant concern with deterring the unjustified action in the first place. As the Fourth Circuit recently stated, "the failure of courts to enforce the EAJA would only benefit parties who seek to drive up company costs by forcing them to defend against meritless unfair labor practice charges. To hold this complaint 'substantially justified' would condone the conversion of Board

processes into a mechanism of harassment." *Hess Mechanical Corp. v. NLRB,* 112 F.3d 146, 151 (4th Cir.1997).

**3.** Dividing this rate into the total amount of fees requested (*i.e.,* $38,612/$150 per hour), we conclude that counsel spent about 257.4 hours working on this matter over the course of four years of litigation. We cannot say that this is an unreasonable amount of time given the scope of the factual record and the lengthy administrative proceedings undertaken.

fees permitted under the EAJA, which was $75 per hour before March 29, 1996, and $125 per hour after that. *See* 28 U.S.C. § 2412(d)(1)(C). Accordingly, we can award Caremore only 50 percent of its fees incurred in 1994 and 1995, and 71.4 percent of its fees incurred in 1996 [4] and 1997. The reduction is as follows:

| Year | Amount Claimed | Amount Awarded |
|------|----------------|----------------|
| 1994 | $16,000 | $8000 |
| 1995 | $12,612 | $6306 |
| 1996 | $3500 | $2499 |
| 1997 | $5500 | $3927 |

Based on the foregoing discussion, it is hereby ORDERED that the NLRB pay to Caremore $4650.66 in costs and $20,732.00 in attorney's fees.

---

4. The record shows that Caremore's attorney only billed time to this matter in the second half of 1996, after the new statutory rate went into effect.