164 F.3d 973
 18 O.S.H. Cas. (BNA) 1602, 1998 O.S.H.D. (CCH)
P 31,736
 TRI-STATE STEEL CONSTRUCTION CO., INC. (97-4118); National
Engineering & Contracting Company (97-3348/4118),
Petitioners,
v.
Alexis HERMAN, Secretary of Labor; Occupational Safety &
Health Review Commission, Respondents.
 Nos. 97-4118, 97-3348.
 United States Court of Appeals,
Sixth Circuit.
 Argued Oct. 29, 1998.
Decided Jan. 13, 1999.
 
 Kent W. Seifried (argued and briefed), POSTON, SEIFRIED & SCHLOEMER, Newport, Kentucky, for Petitioners.
 Ellen L. Beard (argued and briefed), Allen H. Feldman (briefed), Nathaniel I. Spiller (briefed), U.S. DEPARTMENT OF LABOR, OFFICE OF THE SOLICITOR, Washington, D.C., for Respondent.
 Before: GUY, CLAY, and GILMAN, Circuit Judges.
 GUY, J., delivered the opinion of the court, in which CLAY, J., joined. GILMAN, J. (p. 981), delivered a separate opinion concurring in the result.
 OPINION
 RALPH B. GUY, JR., Circuit Judge.
 
 
 1
 Petitioners Tri-State Steel Construction Co., Inc. (Tri-State) and its parent corporation, National Engineering & Contracting Company (National), filed petitions for review of two decisions from the Occupational Safety & Health Review Commission (Commission) concerning the denial of their motions for attorney fees and costs incurred in administrative proceedings instituted by the Secretary of Labor (Secretary). The first petition, brought by both Tri-State and National, arose out of consolidated proceedings in which the Secretary issued several separate citations to Tri-State and National for alleged safety violations at a work site in Cincinnati, Ohio, where bridge reconstruction was being done under contract with the Ohio Department of Transportation (No. 97-3348). The second petition, brought by Tri-State only, also arose out of combined proceedings in which the Secretary issued separate citations to both Tri-State and National for alleged safety violations at a different work site in Goldtown, West Virginia (No. 97-4118).
 
 
 2
 Both appeals involve the question of whether Tri-State is eligible to seek an award of attorney fees and other expenses as a prevailing party in an adversary adjudication under the Equal Access to Justice Act (EAJA), 5 U.S.C. § 504. The Commission concluded in both cases that, although Tri-State's net worth taken alone would not exceed the limits for eligible parties under the EAJA, its net worth should be aggregated with that of National. There is no dispute that National's net worth exceeded the limits and, therefore, when aggregated, Tri-State was ineligible for an award of attorney fees and expenses under the EAJA. The first appeal also raises the question of whether Tri-State and National may seek sanctions under Rule 11 of the Federal Rules of Civil Procedure against the Secretary in the administrative proceedings before the Commission. Petitioners ask that we reverse the Commission's decisions and remand for further consideration of their entitlement to an award of attorney fees and expenses. For the reasons set forth below, we reverse in part and affirm in part.
 
 I.
 A. Procedural History
 1. Case No. 97-3348
 
 3
 Inspections of the Cincinnati work site in May 1989, where both petitioners were subcontractors, resulted in the issuance of two citations, with a total of seven items, to Tri-State; and three citations, with a total of twelve items, to National. The Secretary brought separate complaints against Tri-State and National concerning the alleged safety violations, which were consolidated for purposes of trial. After a trial on the merits, the ALJ issued his decision and order, which was docketed on May 1, 1991, and became final after the expiration of 30 days.
 
 
 4
 On July 1, 1991, Tri-State and National filed a joint motion for attorney fees and expenses with respect to the items on which they prevailed.[1] The ALJ denied the motion in an opinion docketed January 1, 1997,[2] finding first that Tri-State's net worth should be aggregated with that of National under the "real-party-in-interest" test adopted by the Commission in Secretary v. Nitro Electric Co., 16 O.S.H. Cas. (BNA) 1596 (1994). The ALJ also denied both petitioners' requests for sanctions, concluding that sanctions provided for in Fed.R.Civ.P. 11 were not available in proceedings before the Commission because such sanctions were not incorporated into Commission Rule 32, 29 C.F.R. § 2200.32, and were barred by sovereign immunity. This decision became final on February 10, 1997, when the matter was not directed for review by the Commission. Tri-State and National filed their petition for review with this court on April 11, 1997.
 
 2. Case No. 97-4118
 
 5
 National was the general contractor at the site in Goldtown, West Virginia, and Tri-State was one of its subcontractors. As a result of inspections at the site from July to December 1992, the Secretary issued four sets of citations which were contested by petitioners and docketed as cases before the Commission. These cases, two against Tri-State and two against National, were subsequently withdrawn by the Secretary in their entirety. The withdrawals were docketed December 13, 1993.
 
 
 6
 On February 11, 1994, petitioners filed a joint fee petition in which Tri-State sought an award under the EAJA and both Tri-State and National sought discovery sanctions under Commission Rule 52(e), 29 C.F.R. § 2200.52(e). The ALJ denied Tri-State's request under the EAJA, but awarded discovery sanctions. The Commission decided to review the matter and remanded only Tri-State's cases for determination of whether it was an eligible party under the EAJA. On remand, the ALJ concluded, as had the ALJ in the earlier cases, that Tri-State was not an eligible party under the EAJA because its net worth should be aggregated with that of National. The Commission decided to review this decision and affirmed on August 6, 1997.[3] Tri-State filed a petition for review of this decision on October 3, 1997.
 
 B. Tri-State and the EAJA
 
 7
 It is apparent that the facts concerning the issue of aggregation, which are set forth in the various ALJ and Commission decisions, are not disputed and we briefly summarize them here. Tri-State is and was a wholly-owned subsidiary of National Engineering during the relevant time periods. Although National has a net worth in excess of $7 million, Tri-State, standing alone, has always had a net worth of less than $7 million and fewer than 500 employees. The two companies have the same board of directors, but have separate chief executive officers. Tri-State also has separate department heads for accounting, purchasing, estimating and operations, but shares a safety director with National.
 
 
 8
 Tri-State was principally engaged in structural steel erection, placing reinforcement bars and related activities, and hired only ironworkers as tradesmen. National was engaged in earth moving, excavating, concrete form construction, concrete placement, and mechanical contracting. National did not use ironworkers as tradesmen, but employed operating engineers, carpenters, plumbers, laborers, and pipefitters. About half of Tri-State's projects during the relevant period were with National. National did not use Tri-State exclusively, but awarded work to Tri-State when it made the lowest and best bid.
 
 
 9
 Tri-State and National shared the same office space, but each paid their own overhead costs. Tri-State had its own clerical staff and office equipment, its own separate bank accounts and accounting systems, processed its own invoices, purchased its own equipment independent of National, leased ninety percent of its equipment from outside sources, and paid rent to National when it made use of its equipment. National purchased some services on behalf of Tri-State, such as insurance, accounting services, payroll services, and employee benefit plans, for which Tri-State is charged its pro-rata share.
 
 
 10
 In the cases involving the Cincinnati site, which are on appeal as Case No. 97-3348, the ALJ noted that the companies shared the same safety program and the same safety loss director; that they shared several top-level supervisors on the project; and that they were "essentially considered one and the same at the site[.]" Although the OSHA inspections were triggered by conditions relating to Tri-State's employees, it was National that unsuccessfully sought a stay of the expanded inspections that led to citations against both Tri-State and National. Tri-State and National were represented by the same counsel, who had also represented National in prior proceedings before the Commission. The ALJ noted that the affidavits did not mention whether Tri-State paid its own legal fees in the pending cases. The ALJ concluded that the interrelationship between the companies and the availability of National's litigation resources to Tri-State were "special circumstances" requiring aggregation and making an award of fees under the EAJA unjust. The ALJ also concluded that Tri-State was not a "separate entity" from National for purposes of the EAJA.
 
 
 11
 In the cases involving the citations issued for the Goldtown site, which are on appeal as Case No. 97-4118, the ALJ noted that Tri-State paid its pro-rata share for services purchased by National, but emphasized that there was no showing that the costs incurred for those services were equivalent to what it would have paid on the open market. There was evidence presented in these cases that when Tri-State and National were involved in the same OSHA litigation, the invoices for legal services were sent to National and then Tri-State reimbursed National for its share. There was also more detailed evidence offered concerning the financial relationship between the companies, including that the shared board of directors and officers received only one paycheck which was from National. The financial records did not show how often Tri-State was charged for the shared services, although some items were charged on an annual basis, and reflected long-term non-interest bearing loans from National to Tri-State. The ALJ did not find that a parent corporation's ability to advance funds for legal fees was the sole or determining factor but, rather, concluded that, "in this case, the evidence of the closely integrated operations and management of the two corporations is more persuasive."
 
 II.
 
 12
 The petitions for review of the decisions of the Commission are brought under 29 U.S.C. § 660(a), which provides that "[a]ny person adversely affected or aggrieved on an order of the Commission issued under subsection (c) of § 659 of this title" may obtain review of such order by filing a petition for review in the United States court of appeals.[4] Section 660(a) also provides in part that:
 
 
 13
 Upon such filing, the court shall have jurisdiction of the proceeding and of the question determined therein, and shall have power to ... make and enter upon the pleadings, testimony, and proceedings, set forth in such record a decree affirming, modifying, or setting aside in whole or in part, the order of the Commission[.]
 
 
 14
 29 U.S.C. § 660(a). However, the findings of the Commission with respect to questions of fact, if supported by substantial evidence on the record as a whole, shall be conclusive. Id. As is generally the case, we review questions of statutory interpretation and conclusions of law de novo. See Bartlik v. United States Dep't of Labor, 62 F.3d 163 (6th Cir.1995); Ed A. Wilson, Inc. v. General Servs. Admin., 126 F.3d 1406, 1408 (Fed.Cir.1997) (citing Texas Food Indus. Ass'n v. USDA, 81 F.3d 578, 580 (5th Cir.1996) (conclusions of law underlying denial of fees under EAJA reviewed de novo)).
 
 A. EAJA
 
 15
 "The EAJA provides limited exceptions to the general rule of sovereign immunity where recovery of costs against the United States is concerned. The exception should not be construed liberally." National Truck Equip. Ass'n v. NHTSA, 972 F.2d 669, 671 (6th Cir.1992) (citations omitted); Ardestani v. INS, 502 U.S. 129, 137, 112 S.Ct. 515, 116 L.Ed.2d 496 (1991). In separate provisions, the EAJA allows a prevailing party other than the United States to recover fees and expenses incurred "in any civil action" brought by or against the United States, 28 U.S.C. § 2412(d)(1)(A), or in an "adversary adjudication" conducted by an agency of the United States, 5 U.S.C. § 504. Tri-State's requests for fees and expenses were made under § 504 and there is no dispute that the proceedings before the Commission were adversary adjudications for purposes of the statute.
 
 
 16
 In interpreting a statute, the starting point must always be the language in the statute itself. Section 504(a)(1) specifically states in part:
 
 
 17
 An agency that conducts an adversary adjudication shall award, to a prevailing party other than the United States, fees and other expenses incurred by that party in connection with that proceeding, unless the adjudicative officer of the agency finds that the position of the agency was substantially justified or that special circumstances make an award unjust.
 
 
 18
 A party includes a person "named or admitted as a party" in an agency proceeding and a "person" is defined to include "an individual, partnership, corporation, association, or public or private organization other than an agency," 5 U.S.C. § 551(2) and (3). An eligible party is further limited in § 504(b)(1)(B) to include "any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000" and which had not more than 500 employees at the time the adversary adjudication was initiated, except for certain tax exempt organizations and cooperative associations. 5 U.S.C. § 504(b)(1)(B) (emphasis added).[5]
 
 
 19
 Thus, it is clear, as the Commission decisions found, that Tri-State is an eligible party under § 504 since it is a corporation, which was named in the proceedings by the Secretary of Labor and which has a net worth of less than $7 million and less than 500 employees. Further, these provisions do not otherwise limit the eligibility of a corporation under the EAJA and are silent on the question of whether the net worth and employees of an otherwise eligible corporation should be aggregated with any related or affiliated entities.
 
 
 20
 We expressly recognized in National Truck, 972 F.2d at 674, that the EAJA is silent on the question of aggregation except as to certain exempted entities. The Secretary relies on National Truck, where we held the association's membership should be aggregated rendering it ineligible for an award under the EAJA, to support its position. Tri-State, on the other hand, argues that the decision in National Truck must be distinguished from this case. This court's recent decision in Caremore, Inc. v. NLRB, 150 F.3d 628 (6th Cir.1998), sheds light on the scope of the National Truck decision.
 
 
 21
 In Caremore, we limited the holding of National Truck and refused to aggregate the net worth and employees of Caremore, a separately incorporated entity, with that of affiliated nursing homes which were all controlled by one individual through a common corporate parent. Notably, we stated:
 
 
 22
 The NLRB correctly argues that, at least in certain limited contexts, we have held that net worth and employees must be aggregated for EAJA purposes ... [in National Truck ]. Contrary to the NLRB's assertion, however, we have never read the EAJA to include a general aggregation requirement; on the contrary, we have expressly recognized that the EAJA is silent as to the aggregation issue except with respect to certain entities not relevant here.
 
 
 23
 Caremore, 150 F.3d at 630 (citation omitted). We further clarified that the rationale in National Truck was not that the trade association was composed of too large of a membership to qualify, but instead, "that the association was participating in the litigation on behalf of its members, rather than on its own behalf, and aggregation of the members' finances and employees reflected this fact." Id. Turning to the facts in Caremore we concluded, without articulating any particular test, that Caremore was clearly litigating on its own behalf, reciting that it was a separately incorporated entity, the underlying case involved a bargaining unit solely of its own employees, and the legal bills were submitted directly to it. Finding no reason to believe Caremore was litigating on behalf of another entity, we declined to aggregate the net worth or employees of its affiliated entities for purposes of the EAJA. Id. (quoting Texas Food Indus. Ass'n v. USDA, 81 F.3d 578, 582 (5th Cir.1996) ("we find it unlikely that Congress intended an implicit aggregation rule to apply to [partnerships, corporations, and units of local government]")).
 
 
 24
 Conceding that the EAJA is silent, the Secretary argues that aggregation should be permitted because it is consistent with the purpose of the EAJA to aid only small entities. The Secretary relies on the discussion in National Truck, including the observation that "[w]hen businesses have the economic power to pursue litigation against the government without being deterred by the costs, the congressional purposes of the EAJA are undermined by an award to those businesses." National Truck, 972 F.2d at 674. We also stated in Caremore, however, that while one of the rationales of the EAJA is to permit small companies to defend themselves without fear of financial ruin, "we do not believe that is the statute's only animating purpose. There is also a significant concern with deterring the unjustified action in the first place." Caremore, 150 F.3d at 630 n. 2.
 
 
 25
 The Commission applied the now-abandoned "real-party-in-interest" test from its decision in Secretary v. Nitro Electric Co., 16 O.S.H. Cas. (BNA) 1596 (1994), to conclude that Tri-State's separate incorporation should be disregarded in these cases based on its relationship with its parent company.[6] The decisions were not based on any finding that Tri-State was actually litigating on behalf of National, as the association was for its members in National Truck; or as a "front party" with respect to the issue of attorney fees for National, as were the individual church members whose attorney fees were paid by the church in Unification Church v. INS, 762 F.2d 1077 (D.C.Cir.1985); or as a "free rider" in the litigation, as in State of Louisiana ex rel. Guste v. Lee, 853 F.2d 1219 (5th Cir.1988), where the litigation was continued by the ineligible State of Louisiana even after the eligible environmental group ceased being an active party to the litigation. Rather, there can be little doubt that the Commission principally relied on factors drawn from the case of United States v. Lakeshore Terminal and Pipeline Co., 639 F.Supp. 958, 961-63 (E.D.Mich.1986). As we noted in National Truck, the district court in Lakeshore Terminal applied the "real-party-in-interest" doctrine, "but in a manner more analogous to that of piercing the corporate veil." National Truck, 972 F.2d at 672.
 
 
 26
 In the cases before us, the Commission concluded that Tri-State was not the real party in interest largely because TriState was wholly-owned by National, shared its board of directors and the safety director, shared office space and purchased services with National even though Tri-State reimbursed National for its share. The Supreme Court, however, recently explained that under "hornbook law" the exercise of control that results from a parent corporation's ownership of stock in a subsidiary corporation does not create liability beyond the subsidiary even where there is duplication of some or all of the directors or executive officers. See United States v. Bestfoods, 524 U.S. 51, ----, 118 S.Ct. 1876, 1884, 141 L.Ed.2d 43 (1998). To abrogate such basic common law principles of corporate law, a statute must speak directly to the question. Id. Further, the Court criticized the district court for failing to recognize that "it is entirely appropriate" for directors of a parent corporation to serve as directors of its subsidiary. Id. (quoting American Protein Corp. v. AB Volvo, 844 F.2d 56, 57 (2nd Cir.1988)). We also question the emphasis placed on the absence of evidence from Tri-State that its pro-rata share for services purchased by National was as much as it would have been if Tri-State had purchased the services itself on the open market. Further, to the extent that the Commission relied upon the ability of a parent corporation to advance funds, such reliance is inconsistent with the basic premise that a corporation is separate from its shareholders. As Tri-State notes, one district court has stated that "[a]s the term real party in interest connotes, the fact that someone simply advances funds in payment of fees does not resolve the matter if someone else must realistically bear the burden (in this example, via reimbursement)." Germano-Millgate Tenants Ass'n v. Cisneros, 855 F.Supp. 233, 235 (N.D.Ill.1993).
 
 
 27
 Finally, the Secretary argues in the alternative that aggregation of assets with a parent corporation that is ineligible under the EAJA should be considered to be "special circumstances" that justify the denial of an award of fees and expenses. We have, as the Secretary acknowledges, rejected this approach in National Truck and held that "special circumstances" implicate substantive issues such as close or novel questions of law. The aggregation inquiry relates to the definition of a prevailing party and must be determined before considering whether there are special circumstances. National Truck, 972 F.2d at 672. Since the decision in Case No. 97-3348 seems to rest on this rationale, it is contrary to the law of this circuit.
 
 
 28
 Accordingly, we must reverse the decisions in both cases with respect to the question of Tri-State's eligibility for an award of fees and expenses under the EAJA. This case must be distinguished from cases like National Truck and Unification Church, where the eligible party was litigating on behalf of others, and is more akin to the situation in Caremore. Tri-State is a separate corporate entity, litigating on its own behalf, and the interrelationship between Tri-State and its parent corporation cannot justify the Commission's aggregation of Tri-State's assets with those of National for purposes of the EAJA.[7]
 
 B. Rule 11 Sanctions
 
 29
 Tri-State and National both argue the Commission erred by finding that sanctions under Rule 11 of the Federal Rules of Civil Procedure are not available in proceedings before it (No. 97-3348). Obviously, these proceedings were not conducted in federal court and, as a result, Rule 11 is not directly applicable. Rather, petitioners argue that the monetary sanctions provided in Rule 11 were incorporated into the Commission's Rules by operation of Commission Rule 2(b), 29 C.F.R. § 2200.2(b), which states: "In the absence of a specific provision, procedure shall be in accordance with the Federal Rules of Civil Procedure." We disagree and affirm the decision in Case No. 97-3348 with respect to this issue.
 
 
 30
 The substantive requirements of Rule 11(a) and (b) include a signature requirement, which certifies that the pleading, motion or other paper is not brought for an improper purpose; the claims or defenses are warranted by existing law, or a nonfrivolous argument for the extension, modification, reversal or adoption of law; and the factual allegations or denials have or are likely to have evidentiary support. Rule 11 also provides for sanctions, including monetary sanctions, for violation of the certification requirements. As the ALJ noted, "Commission Rule 32 is a condensed version of Rule 11 containing essentially the same language." See 29 C.F.R. § 2200.32. The two rules are substantively the same, but differ with regard to the question of sanctions. Commission Rule 32 has never provided for monetary sanctions for violation of its requirements and, at the time of the ALJ's decision, stated "[i]f a pleading, motion or other paper is signed in violation of this rule, such signing party or its representative shall be subject to the sanctions set forth in § 2200.41 or § 2200.104." Id. The sanctions referenced in Commission Rule 32 include (1) declaring a party in default, entering a decision against the defaulting party, and striking the pleading or other document filed in violation of the rule, 29 C.F.R. § 2200.41; and (2) being excluded from a proceeding or suspended or disbarred from practice before the Commission, 29 C.F.R. § 2200.104.
 
 
 31
 Thus, we find petitioners may not resort to Rule 11 for an award of sanctions in proceedings before the Commission since the Commission Rules contain a specific provision that is substantively the same as Rule 11. Further, the Commission's explicit inclusion of some sanctions, without providing for monetary sanctions, indicates an intention to preclude monetary sanctions for violations of Commission Rule 32.[8] Having concluded that Rule 11 sanctions may not be incorporated into the Commission Rules, we need not decide whether the doctrine of sovereign immunity also precludes an award of Rule 11 sanctions against the United States in proceedings before the Commission.
 
 
 32
 The Commission's decision in Case No. 97-3348 that Tri-State and National may not seek attorney fees and expenses as sanctions under Rule 11 for conduct in proceedings before the Commission is AFFIRMED. The Commission's decisions in both Case Nos. 97-3348 and 97-4118 that Tri-State is ineligible to seek an award of attorney fees under the EAJA is REVERSED, and Tri-State's claims for fees and expenses under the EAJA are REMANDED for further proceedings consistent with this opinion.
 
 
 33
 GILMAN, Circuit Judge, concurring.
 
 
 34
 I concur in the result reached by the majority because Tri-State does not appear to be a "front" or "alter-ego" for National. I write separately, however, because I wish to emphasize that the majority's opinion should not be interpreted to mean that this court will grant attorneys' fees under the Equal Access to Justice Act, 5 U.S.C. § 504 ("EAJA"), to any corporate entity that technically meets EAJA's requirements, regardless of the extent of its affiliation with ineligible corporations.
 
 
 35
 The purpose of EAJA is to assist "small businesses" and "persons ... for whom costs may be a deterrent to vindicating their rights." See H.R.Rep. No. 96-1418, at 10, 15 (1980) reprinted in 1980 U.S.C.C.A.N. 4984, 4988, 4994. In furtherance of this purpose, EAJA limits the award of fees to entities whose net worth does not exceed $7,000,000 and that have fewer than 500 employees. See 5 U.S.C. § 504(b)(1)(B). Tri-State is such an entity, but its parent corporation, National, is not.
 
 
 36
 Based upon the record before us, I concur with the majority's conclusion that Tri-State is not litigating on behalf of National, nor is it a mere front or alter-ego of its parent company. On the other hand, the two companies share the same board of directors, the same safety director, the same office facilities, and they are represented by the same outside counsel. I thus find this to be a very close case.
 
 
 37
 Although, as the majority notes, the statute is silent as to whether the assets and workforces of parent companies and their subsidiaries should be aggregated for the purpose of determining eligibility, a rule that would prevent aggregation under any circumstances would contravene the purpose of EAJA. In holding that Tri-State is eligible for attorneys' fees under EAJA, I do not believe that this court is opening the barn door for EAJA-fee claims by shell corporations that do not function as independent entities. Nor do I understand the decision in the present case to preclude courts from engaging in a "real-party-in-interest" analysis where it appears that a subsidiary corporation is litigating on behalf of the parent. Finally, I do not believe that the plain language of the statute, specifically the term "corporation," compels this court to engage in mechanical, formalistic deference to the corporate form.
 
 
 38
 Rather, I take the majority decision to mean that Tri-State is not a front or an alter-ego of National, and is thus sufficiently independent to be eligible for attorneys' fees under EAJA. For this reason, I concur in the majority's decision.
 
 
 
 [1]
 Tri-State sought fees and expenses for two items vacated at the hearing and three items withdrawn by the Secretary pending review by the Commission (five out of seven items). National sought fees and expenses for four items vacated at the hearing, two items withdrawn by the Secretary pending the Commission's review, and one item vacated by the Commission (seven out of twelve items). No determinations were made on the question of whether Tri-State or National were prevailing parties or whether the position of the Secretary was substantially justified in either case
 
 
 [2]
 Due to a stay, the motion for attorney fees and expenses was not fully briefed before the ALJ until April 1993
 
 
 [3]
 When the Commission directed a review of the decision in June 1997, the appeal in the first case was already pending. Petitioners moved to remand the pending appeal so additional evidence offered in the later proceeding also could be considered. Before the motion could be decided, however, the Commission issued its decision. As a result, the motion to remand was denied
 
 
 [4]
 The Secretary states that the ALJs had jurisdiction under 29 U.S.C. §§ 659(c) and 661(j), which provide that an ALJ will make determinations concerning contested citations issued by the Secretary, subject to discretionary review by the Commission. When the Commission does not direct review of an ALJ's decision, that decision becomes the final decision of the Commission
 
 
 [5]
 These eligibility requirements are also set forth in Commission Rule 105, 29 C.F.R. § 2204.105
 
 
 [6]
 While the Commission applied the Nitro rule to decide whether Tri-State's net worth should be aggregated with National's making it ineligible for fees under the EAJA, it also signaled its intention to abandon the case-by-case approach and adopt a new rule. Recognizing that the validity of the new rule, which became effective after the decisions in these cases, is not an issue before the court, the Secretary nonetheless suggests that the Model Rule, drafted by the former Administrative Conference of the United States, on which it was based is consistent with congressional intent. As Tri-State points out, however, an administrative rule may not alter the provisions of a statute. United States v. Larionoff, 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977). When the Model Rules were drafted, the Department of Justice "expressed concern" about the provision "providing for the aggregation of the net worth of affiliated entities" (along with two other provisions) because of "doubts whether the Act authorizes agencies to adopt such substantive standards by regulation." 46 Fed.Reg. 32900, 32902 (1981)
 
 
 [7]
 We note that the record is devoid of any specific evidence on the question of whether, to what extent, and when Tri-State paid its share of attorney fees and expenses incurred in this case. Such evidence may be relevant to the determination of whether and to what extent Tri-State is entitled to an award under the EAJA
 
 
 [8]
 Petitioners emphasize that the sanctions included in Commission Rule 32 were added effective December 10, 1992, after the conduct for which they sought sanctions had occurred. See 57 Fed.Reg. 41676-78 and 41685 (1992). Prior to this change, however, the general sanction provision of Commission Rule 41 was applicable to violations of Commission Rule 32. In fact, the reference to Rule 41 was specifically added in order to make this explicit. Id. at 41678