**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-1087**

JAMES W. BEAUCHAMP,

              Petitioner,

         v.

FEDERAL AVIATION ADMINISTRATION,

              Respondent.

On Petition for Review of an Order of the National Transportation Safety Board. (330-EAJA-SE-18077)

Argued: May 13, 2010                    Decided: June 23, 2010

Before TRAXLER, Chief Judge, WILKINSON, Circuit Judge, and Samuel G. WILSON, United States District Judge for the Western District of Virginia, sitting by designation.

Petition for review denied by unpublished per curiam opinion.

William Hunter Old, KAUFMAN & CANOLES, PC, Williamsburg, Virginia, for Petitioner. Laura Jennings, FEDERAL AVIATION ADMINISTRATION, Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

James W. Beauchamp petitions for review of an order of the National Transportation Safety Board ("NTSB") reversing an ALJ's order awarding attorneys' fees and costs to Beauchamp as a result of an action that the Federal Aviation Administration ("FAA") pursued against him. Finding no error, we deny the petition.

## I.

In November 2005, Joel Clay agreed to buy Beauchamp's Piper Cherokee 180 aircraft on the condition that Beauchamp, an aviation mechanic, would overhaul the engine prior to sale. By entries in the plane's engine logbook, Beauchamp represented that he subsequently installed new parts, including a camshaft and lifter bodies, and that he complied with the service bulletins from the engine manufacturer in performing the overhaul.

Clay took possession of the aircraft in February 2006 and flew it for a total of approximately 26 hours through November 2006, apparently without difficulty. In November 2006, however, Clay discovered a serious problem while performing the pre-flight checklist—the aircraft was experiencing "magneto drop"–i.e., the props would not spin at the required speed. Clay hired Ron Davis, the mechanic at the Oklahoma bulk hangar where

2

he kept the plane, to diagnose the problem. When Davis disassembled the engine, he found the camshaft and lifter bodies in such poor condition that he concluded they were used parts. On November 15, 2006, based on Davis's conclusions, Clay sent a letter to the FAA requesting that it investigate whether Beauchamp actually performed the overhaul and whether his engine logbook entries were false. Clay attached digital pictures that Davis claimed to have taken of the engine.

On January 27, 2007, the FAA sent inspectors to Oklahoma to investigate Clay's complaint. The inspectors found the engine still disassembled, and Davis later certified that the disassembled parts were the same ones he had removed when he was trying to diagnose the problem. The FAA contacted Beauchamp once during the investigation and Beauchamp responded by providing digital photos that he claimed to have taken while overhauling the plane and a receipt for a new cam shift/lifter body kit that he represented he installed.

As a result of their investigation, the FAA inspectors found discrepancies between Beauchamp's logbook entries and the actual condition of the engine parts presented to them: (1) Beauchamp logged that he installed a new kit that he had purchased containing camshaft and lifter bodies, but the FAA inspectors observed that the lifter bodies were made by a different manufacturer than the camshaft and that the lifter

3

bodies appeared to have a significantly higher amount of wear and tear than would new equipment; (2) Beauchamp entered that he complied with the service bulletins, but the FAA inspectors determined that he did not replace the thermostatic bypass valve or the AC diaphragm fuel pump with new parts as the bulletins required; (3) FAA inspectors concluded Beauchamp did not replace composite floats in the carburetor with metal ones, as required by the service bulletins; and (4) based on the fact that the magnetos were dirty and the bearings were not lubricated, inspectors determined that Beauchamp did not overhaul the magnetos as he represented he had in the logbook.

In August 2007, the FAA issued an order revoking Beauchamp's airman mechanic certificate on the basis that Beauchamp made intentionally false or fraudulent entries in his logbook, in violation of 14 C.F.R. § 43.12(a)(1) (2009), and that he failed to use the proper methods and practices prescribed by the applicable manufacturer, in violation of 14 C.F.R. § 43.13(a) (2009).

Beauchamp then appealed the order to the NTSB. The case was assigned to an ALJ, who conducted an evidentiary hearing.

Before the ALJ, Beauchamp argued that he installed the new camshaft/lifter kit, and therefore that the ones inspected by the FAA could not have been the same parts he installed; that he indeed installed a new bypass valve and that any damage to it

4

occurred when Davis was dismantling the engine; that the fuel pump he installed was new; that he indeed put metal floats in the carburetor as required and that the FAA must have been given a different part to inspect; and that he cleaned the magnetos and replaced every part, so that any damage to the magnetos must have occurred while the plane was in Clay's possession as a result of nonuse or contaminated oil.

The ALJ reversed the order revoking Beauchamp's airman mechanic certificate and dismissed the charges, finding that Beauchamp did not make false statements in the logbook regarding the installation of new parts or the compliance with the manufacturer's service bulletins. The ALJ noted that the FAA presented a sound case that Beauchamp installed used parts instead of new ones but that Beauchamp likewise made a convincing case that he had performed the work entered in the engine log.

The ALJ acknowledged, "This case represents to me a bit of a mystery as to how all of these used, worn, and inferior parts were later found in this engine and taken out of the engine almost a year after the engine had been overhauled by . . . Beauchamp." J.A. 855-56. The ALJ concluded that "it comes down . . . in [the] final essence, to . . . who are you going to believe?" J.A. 854. The ALJ found Beauchamp's testimony that he installed new parts to be very believable, that nothing was

wrong with the plane at the time of delivery to Clay, and that the plane thereafter was used very seldom and mostly sat dormant in the hangar—which could have accounted for the engine problems. Accordingly, the ALJ stated that he was "giving the Respondent [Beauchamp] the benefit of the doubt." J.A. 857. The FAA later filed an appeal of the ALJ's order but ultimately withdrew it.

As the prevailing party in the proceeding, Beauchamp filed a request for costs and attorneys fees under the Equal Access to Justice Act ("EAJA"), see 5 U.S.C.A. § 504(a)(1) (West 2007) (providing that in an adjudication before a federal agency, the agency "shall award" fees and costs to the prevailing party unless the "position of the agency was substantially justified"). The ALJ noted that Beauchamp was eligible for a fee award under the EAJA insofar as his status as a prevailing party was undisputed. Thus, the only issue to be resolved was whether the FAA's position was "substantially justified" throughout the proceedings. In contrast to his initial order on the merits wherein he indicated that this was a close case, the ALJ concluded that the FAA's position following its investigation was not substantially justified and that a reasonable person would not have pursued the complaint:

> From its inception the investigation in this matter was an exercise gone awry. The FAA inspectors were faced with a lack of sufficient reliable evidence

6

from the beginning of their involvement in this matter. The inspectors ignored the following several large proof problems: (1) no one saw the engine taken apart [by Davis at Clay's request], which was two months before the inspectors saw the engine; (2) the engine oil and oil filter had been discarded; (3) the cam shaft had been buffed and cleaned; (4) the engine parts had been left unsecured in a bulk hangar for more than two months and chain of custody was an issue. None of these obvious problems adequately was taken into account, nor was independently verifiable rebuttal evidence provided by [Beauchamp] which would have led a reasonable person to decide not to pursue the complaint.

J.A. 1126.

The FAA appealed the fee award to the full NTSB, arguing its actions were substantially justified. The NTSB reversed the fee award, reasoning that the ALJ resolved the charges against Beauchamp on the basis of a credibility determination—in other words, there was no definitive proof that Beauchamp did or did not install new parts or refurbished parts and the ALJ simply had to decide between Beauchamp's testimony and Davis's. The NTSB followed the rule that when credibility is a primary component of the ALJ's decision, a fee award under the EAJA is not appropriate. The NTSB explained:

> [T]he only manner in which the [ALJ] could have resolved the apparent contradictions in the evidence was to engage in an assessment of [Ron] Davis's credibility and [Beauchamp's] credibility. Mr. Davis asserted that the parts that he removed from the aircraft and photographed were the same parts at issue here, and that he kept the parts in the hangar until [the FAA] Inspectors . . . requested [the parts be sent to them].

7

> In response to [the FAA's] evidence, [Beauchamp] . . . testified that all of the parts that he used . . . were either brand new or were freshly overhauled. This testimony directly contradicts that of Mr. Davis . . . . [Beauchamp] attempted to assert that Mr. Clay's use of the aircraft explained the appearance of the parts, and implied that Mr. Davis may have exchanged the newer parts in the aircraft for used parts during [Davis's] inspection. Given that [Beauchamp] did not provide any extrinsic evidence to support these assertions, but instead relied on his own testimony, we find that the [ALJ] was required to resolve this case predominately on the basis of credibility.

J.A. 1180-82 (citation omitted).

Beauchamp now petitions for review of the NTSB order reversing the ALJ's fee award.


## II.

On appeal, Beauchamp repeats his contention that the FAA's pursuit of the complaint against him was not substantially justified. We conclude that substantial evidence supported the NTSB's contrary decision. See Hess Mech. Corp. v. NLRB, 112 F.3d 146, 149 (4th Cir. 1997) (explaining that our review of an agency decision under the EAJA is for substantial evidence).

Under the EAJA,

> [a]n agency that conducts an adversary adjudication shall award, to a prevailing party other than the United States, fees and other expenses incurred by that party in connection with that proceeding, unless the adjudicative officer of the agency finds that the position of the agency was substantially justified or that special circumstances make an award unjust.

5 U.S.C.A. 504(a)(1). In this context, "substantially justified" means "justified to a degree that could satisfy a reasonable person." Pierce v. Underwood, 487 U.S. 552, 565 (1988). And, an agency does not necessarily act unreasonably simply by relying on the credibility of a witness whose testimony the factfinder ultimately declines to credit. See EuroPlast, Ltd. v. NLRB, 33 F.3d 16, 17-18 (7th Cir. 1994).

We conclude that substantial evidence in the record supports the NTSB's conclusion that the FAA reasonably decided to revoke Beauchamp's airman mechanic certificate. Such evidence included:

• testimony of Davis, a certified, experienced airplane mechanic, that the parts inspected by the FAA were the same ones he took from the plane during his inspection; that he found composite floats in the carburetor instead of metal; that the cam shaft and lifter bodies were worn beyond what a new engine would have been; and that numerous other parts were not in an overhauled state;

• photographs taken by Davis of the parts removed during his inspection that depicted various parts in a dirty state inconsistent with a recent engine overhaul; and

• testimony and notes from the FAA inspectors that the logbook was not consistent with the appearance and wear of various engine parts.

In response, Beauchamp provided the FAA with a statement certifying that he did everything noted in the logbook, and provided photos of his overhaul process and receipts for the parts purchased. The FAA, however, was not required to take

9

Beauchamp's statements at face value. Thus, it was justified in temporarily revoking the certificate.

Beauchamp contends that the ALJ correctly ruled that the FAA failed to account for four major problems with its proof: (1) that Davis disposed of the oil and oil filters before anyone could see (implying that Davis was trying to hide the fact that the oil was contaminated because Clay did not maintain the engine properly and could have caused the parts to exhibit wear and tear); (2) the camshaft was cleaned and buffed (implying that Davis was trying to cover up contaminated oil that would have been on the camshaft); (3) the parts were left in an unsecured bulk hangar for two months; and (4) no one from the FAA saw Davis or anyone else take apart the engine.

We conclude, however, that the FAA's information in each instance adequately addressed these issues. Davis testified that he did not polish the camshaft or alter any of the parts, and the FAA presented substantial evidence that the condition of the rest of the engine was not consistent with the presence of contaminated oil. As for the fact that the parts were left in an unsecured hangar for two months, Davis testified that he had never had anyone tamper with parts he was using at the hangar. And finally, the observation that no one from the FAA saw Davis or anyone else disassemble the engine would be significant only

10

if the FAA had reason to doubt Davis's veracity, which it did not.

For all of these reasons, we hold that substantial evidence supported the NTSB's conclusion that despite the fact that the FAA did not ultimately prevail in its case against Beauchamp, it was substantially justified in proceeding as it did.

### III.

In sum, finding no error by the NTSB, we deny the petition for review.

PETITION FOR REVIEW DENIED

11