**UNITED STATES of America**

v.

**Judith A. PETERSON, Ph.D., Richard E. Seward, M.D., George Jerry Mueck, Gloria Keraga, M.D., and Sylvia Davis, M.S.W.**

**No. CR. H–97–237.**

United States District Court, S.D. Texas, Houston Division.

Oct. 6, 1999.

Larry D. Eastepp, Quincy L. Ollison, W. Brad Howard, Assistant United States Attorneys, U.S. Department of Justice, Houston, TX, for United States.

Russell "Rusty" Hardin, Jr., Anthony Douglas Drumheller, Cathleen Cochran Herasimchuk, Rusty Hardin & Associates, Houston, TX, for Defendant Judith A. Peterson, Ph.D.

Chris Flood, Houston, TX, for Defendant Richard E. Seward, M.D.

Lawrence D. Finder, Haynes & Boone, Thomas A. Hagemann, Mayor, Day, Caldwell & Keeton, Houston, TX, for Defendant George Jerry Mueck.

Dan Lamar Cogdell, Boyd & Cogdell, Joseph M. Grant, Nicholas Grant, et al, Houston, TX, for Defendant Gloria Keraga, M.D.

David Gerger, Foreman, DeGeurin & Nugent, Houston, TX, for Defendant Sylvia Davis, M.S.W.

### ORDER

WERLEIN, District Judge.

Pending are Applicants–Defendants Judith A. Peterson's, Richard E. Seward's, George Jerry Mueck's, Gloria Keraga's, and Sylvia Davis's Applications to Recover Attorneys' Fees and Expenses pursuant to the "Hyde Amendment" (Document Nos. 265, 269, 274, 275, and 276), to which the Government has filed its Response in opposition. After careful review of the applications, responses, and briefs submitted by the parties, and after having examined the law and taken into account the Court's assessment of the case presented by the United States during five months of jury trial, the Court concludes that the applications should be denied.

### Background

The United States Grand Jury returned an Indictment against Defendants on October 29, 1997, which in Count 1 charged conspiracy to commit mail fraud and wire fraud, and in Counts 2–60 charged 59 separate counts of mail fraud. The jury trial began on September 8, 1998, and continued for five months until February 9, 1999, when the Court declared a mistrial due to an insufficient number of remaining jurors to continue the trial without agreement of all parties, which continuation was not agreed by all Defendants. On March 1, 1999, the Government moved to dismiss the Indictment. Within 30 days after dismissal of the Indictment, all Defendants filed their Applications for Attorneys' Fees.

### The Hyde Amendment

The Hyde Amendment provides, in relevant part:

> [T]he court, in any criminal case (other than a case in which the defendant is represented by assigned counsel paid for by the public) ... may award to a prevailing party, other than the United States, a reasonable attorney's fee and other litigation expenses, where the court finds that the position of the United States was vexatious, frivolous, or in bad faith, unless the court finds that special circumstances make such an award unjust. Such awards shall be granted pursuant to the procedures and limitations (but not the burden of proof) provided for an award under section 2412 of title 28, United States Code.

Pub.L. No. 105–119, Title VI, § 617, 111 Stat. 2440, 2519 (1997) (codified as statutory note at 18 U.S.C. § 3006A). The Hyde Amendment expressly limits recovery of fees to "a prevailing party, other than the United States," and excludes cases in which the defendant is represented by assigned counsel paid for by the public. *Id.*

■ The Hyde Amendment incorporates the procedures and limitations, but not the burden of proof, of "section 2412 of title 28, United States Code," the Equal Access to Justice Act ("EAJA"). In a civil case, the EAJA places upon the Government the burden to prove that its litigation position "was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). *See Lively v. Bowen,* 858 F.2d 177, 180 (4th Cir.1988); *see also United States v. Reyes,* 16 F.Supp.2d 759 (S.D.Tex.1998) (Hittner, J.). The Hyde Amendment, however, in criminal cases places upon the defendant-applicant the burden to prove " 'that the position of the United States was vexatious, frivolous or in bad faith, unless the court finds that special circumstances make such an award unjust.' " *See Reyes,* 16 F.Supp.2d at 760 (quoting Hyde Amendment).

■ The Hyde Amendment does not define the terms "vexatious, frivolous, or in bad faith." This Court in *Reyes* applied the plain language of the statute, observing that *Black's Law Dictionary* (6th ed.1990) defined (1) frivolous as "of little weight or importance," (2) vexatious as "without reasonable or probable cause or excuse," and (3) bad faith as "imply[ing] the conscious doing of a wrong because of dishonest purpose or moral obliquity." *Id.* at 761; *cf. United States v. Holland,* 34 F.Supp.2d 346, 360 (E.D.Va.1999) ("vexatious" requires the court to "focus upon whether the prosecution was 'lacking justification ... intended to harass ... and harassment by process of law' "), *vacated in part on other grounds,* 48 F.Supp.2d 571 (E.D. Va.1999). *Black's Law Dictionary* 668 (6th ed.1990) also defines a "frivolous action" as a "groundless lawsuit with little prospect of success; often brought to embarrass or annoy the defendant." A "vexatious proceeding" is defined as a "proceeding instituted maliciously and without probable cause." *Id.* at 1565. These additional definitions, together with prior decisions and a plain reading of the statute, suggest that the Hyde Amendment does not apply when the position of the United States is the product of simple negligence or benign prosecutorial misjudgment, and may not apply even when the government has so little proof of guilt that no rational trier of fact could find the defendant guilty beyond a reasonable doubt. Thus, a defendant who is a prevailing party by reason of having obtained a verdict of "not guilty," or even by reason of having obtained a Fed.R.Crim.P. 29(a) judgment of acquittal, is not *ipso facto* entitled under the Hyde Amendment to recover attorney's fees from the Government. *See, e.g., United States v. Troisi,* 13 F.Supp.2d 595 (N.D.W.Va.1998) (attorney's fees denied to defendant acquitted by jury); *Reyes,* 16 F.Supp.2d 759 (attorney's fees denied to defendant who was granted Rule 29(a) judgment of acquittal). Moreover, as already observed, when applying for attorney's fees in a criminal case under this heightened standard of "vexatious, frivolous, or in bad faith," the burden of proof shifts from the Government to the applicant.

Awards of attorneys' fees under the Hyde Amendment are also required to be made pursuant to the "procedures and limitations" of 28 U.S.C. § 2412. Some of the Section 2412 procedures and limitations engrafted upon the Hyde Amendment are the following: (1) a party seeking an award of fees and other expenses must file a detailed application for such within thirty (30) days of final judgment (§ 2412(d)(1)(B)); (2) no award of attorneys' fees can be made in excess of $125 per hour unless the court finds that certain special factors are present (§ 2412(d)(2)(A)); and (3) a "party" is "an individual whose net worth did not exceed $2,000,000 at the time the ... action was filed" (§ 2412(d)(2)(B)).

*Mueck's Application*

The application of George Jerry Mueck [1] is different from the other applications in that Mr. Mueck has presented no proof that he is an individual whose net worth did not exceed $2,000,000 at the time the action was filed against him and that he personally paid the fees of his attorneys. This is one of the Section 2412 limitations that is engrafted upon the Hyde Amendment by its express language. Under § 2412(d)(2)(B), the term "party," which is used in the phrase "prevailing party," is defined as an individual whose net worth did not exceed $2,000,000 at the time the action was filed.

Applicant Mueck argues that he need not prove his net worth qualification because his application is brought under 28 U.S.C. § 2412(b), not § 2412(d). Section 2412(b) of the EAJA provides for recovery of attorney's fees and expenses by a prevailing party in any civil action brought by or against the United States "to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award." 28 U.S.C. § 2412(b). Applicant Mueck argues that the Hyde Amendment permits him to obtain fees under § 2412(b), unencumbered by the other procedures and limitations of Section 2412. Thus, he argues, the eligibility requirements of § 2412(d)(2) do not apply to him, and he should recover reasonable attorney's fees and expenses notwithstanding his failure to demonstrate his eligibility under § 2412(d)(2).

Section 2412(b) waives sovereign immunity in order to subject the United States to liability for the attorney's fees and expenses of a prevailing party in a civil action "to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award." Under Mueck's theory, he must therefore apply for fees either as provided by "common law" or as provided by a statute. The "American rule" permits fee shifting in a civil case at common law only when the losing party acted in bad faith, vexatiously, wantonly, or for oppressive reasons, and an application by a prevailing party may be made in a civil action under § 2412(b) on that basis. *See Perales v. Casillas,* 950 F.2d 1066, 1071 (5th Cir. 1992). Applicant Mueck, however, in this criminal case asserts no entitlement to fees under the common law fee shifting rule applicable in civil cases. Instead, he relies upon a federal statute, the Hyde Amendment, which does apply to criminal cases. When applying for fees under a "statute which specifically provides for such an award," however, § 2412(b) liability is imposed *"under the terms of [that] statute."* 28 U.S.C. § 2412(b) (emphasis added). As already observed, the terms of the Hyde Amendment specifically require that awards "be granted pursuant to the procedures and limitations (but not the burden of proof) provided for an award under Section 2412 of Title 28, United States Code." The question, therefore, is whether the limitations of § 2412(d) apply to applications made under the Hyde Amendment. In the judgment of the Court, they do, and for several reasons.

First, a plain reading of the statutory language requires this conclusion. To adopt Applicant Mueck's view of § 2412(b) would require the Court either to ignore and read out of § 2412(b) the clause, "under the terms of any statute ...," or to ignore and read out of the Hyde Amendment its express adoption of the procedures and limitations of Section 2412. This Court cannot ignore either proviso.

Second, the Hyde Amendment was passed in order to "incorporate the EAJA into the criminal context to the extent applicable." *United States v. Gardner,* 23 F.Supp.2d 1283, 1290 (N.D.Okla.1998). The argument that the Hyde Amendment provides a separate source of statutory authority for allowing the award of fees in criminal cases solely under § 2412(b) un-

---

**1.** Mr. Mueck was administrator of Spring Shadows Glen Psychiatric Hospital.

dercuts this rationale. As the Government points out, if this interpretation of the Hyde Amendment were accepted, every litigant would choose to proceed only under § 2412(b) and thereby avoid all limitations of Section 2412.

Third, waivers of sovereign immunity, like that found in the Hyde Amendment, are to be narrowly construed. *See Russell v. National Mediation Bd.,* 775 F.2d 1284, 1287 (5th Cir.1985) (citing cases). Congress was aware of the limitations of § 2412(d) when it passed the Hyde Amendment. If it intended those exceptions not to apply, then appropriate language could have been inserted in the legislation. Congress did carve out a modification, for example, when it expressly stated in the Hyde Amendment that the EAJA burden of proof was not applicable.

Fourth, the applicability of § 2412(d) is further indicated when one compares the language used in the Hyde Amendment with the language of § 2412(d)(1)(A). The Hyde Amendment authorizes an award when

> "the court finds that the *position of the United States* was vexatious, frivolous, or in bad faith, *unless the court finds that special circumstances make such an award unjust.*"

(emphasis added). The model for the phraseology of this language appears to have been § 2412(d)(1)(A), which authorizes a fee award

> "unless the court finds that the *position of the United States* was substantially justified *or that special circumstances make an award unjust.*"

(emphasis added). No similar language is found in § 2412(b). It seems untenable, therefore, to argue that when Congress incorporated the "procedures and limitations" of Section 2412, that it was oblivious to, or intended implicitly to exclude, the specific procedures and limitations contained in § 2412(d).

Finally, although there were no hearings or committee reports generated regarding the Hyde Amendment, Representative Hyde's remarks when he introduced the Amendment generally imply that applications filed under the Hyde Amendment should be scrutinized in the same manner as a case brought under § 2412(d) of the EAJA. *See* 143 CONG. REC. H7786–04, H7791 (daily ed. Sept. 24, 1997).

■ Accordingly, the Court finds that Applicant Mueck is procedurally barred from recovering attorneys' fees and expenses because he failed to prove that he personally paid his attorneys' fees and that he was an individual with a net worth of less than $2,000,000 when the action was filed. *See United States v. Ranger Electronic Communications, Inc.,* 22 F.Supp.2d 667, 674 (W.D.Mich.1998) (holding that restrictions of § 2412(b) waiver of sovereign immunity as to other fee statutes and under the common law applied only to civil actions); *Gardner,* 23 F.Supp.2d at 1293 (applying all limitations and definitions contained in § 2412). *But see Holland,* 34 F.Supp.2d at 358–59 (holding that the applicant who elected to proceed under § 2412(b) was not subject to the procedures and limitations of § 2412(d)).

### Peterson's, Seward's, Keraga's and Davis's Applications

■ Assuming without deciding that Applicants Peterson, Seward, Keraga and Davis [2] are prevailing parties within the meaning of the Hyde Amendment, and that dismissal without prejudice of the Indictment against them was a final judgment—issues upon which the parties have disagreements—the Court will determine their Applications based upon the merits. The Court has carefully considered these Applications, some of which cogently pres-

---

2. Dr. Peterson was a psychologist, Drs. Seward and Keraga were psychiatrists, and Ms. Davis was a therapist who worked with Dr. Peterson, at Spring Shadows Glen Psychiatric Hospital.

ent the Applicants' respective arguments as to how the evidence and inferences from the evidence should be viewed in their favor, and from which they argue that the Government, presumably ignorant of Defendants' side of the case, adopted a position that was vexatious, frivolous, or in bad faith.

In determining whether the Government's position in this case was vexatious, frivolous, or in bad faith, the Court also draws upon five months of presiding over a jury trial at which the Government presented the larger portion of its case.[3] The Court heard the testimony of more than 30 of the Government's 140+ listed witnesses. These witnesses included employees of a number of corporations and insurance companies who had been in charge of health care benefits for their employees or clients, or variously who were investigators, designers of insurance benefit programs, insurance administrators, managers of claims, managers of corporate benefits, records custodians, and the like; numerous psychiatric patients who had generous, high dollar mental health insurance plans, who had been treated by various of Defendants over extremely long periods of time (one to two years and longer) while they were hospitalized at Spring Shadows Glen Psychiatric Hospital, and who demonstrated virtually no mental improvement (the reverse seemed to be typical) throughout their treatments, but who soon recovered once their insurance benefits had been exhausted or terminated and the patients were discharged and freed from the ostensible psychiatric and psychological care provid-

ed by Defendants;[4] a number of friends and family members of Defendants' former patients; at least a half dozen medical doctors, of whom five were psychiatrists; three nurses; and a variety of school teachers, children's and adolescents' social case workers, and the like. A large number of audiotapes were received in evidence, containing excerpts from numerous bizarre and outlandish "treatment" sessions to which the various long-term, well-insured patients were subjected by different combinations of Defendants. The Court also reviewed many of the thousands of pages of documents that were received into evidence.

Throughout these five months of immersion in this subject, the Court also had opportunity constantly to observe the Government's preparation, the conduct and demeanor of the Government's counsel and case agents, the substance of its evidence, and likewise, to observe the quality and content of the testimony that the Government elicited in the light of excellent cross-examination conducted by these Defendants' able trial attorneys. It was a trial in which the Government's case largely depended upon circumstantial evidence and, due to the mail fraud charged and the nature of the evidence presented, required an inordinate amount of time to present.[5] To be sure, the Government had a difficult case to prove, and perhaps at the end of a full trial could not have persuaded a jury beyond a reasonable doubt of the guilt of some or even all of Defendants. Nonetheless, far from coming to Court empty handed, the Government regularly demonstrated its thorough and detailed good

---

3. When a mistrial was declared due to a shortage of jurors, the Government estimated that it still needed another month or two to complete the presentation of its evidence.

4. These Defendants diagnosed and/or treated various of these patients as members and/or victims of clandestine "Satanic cults" that committed horrendous crimes (e.g., murder, rape, cannibalism, etc.) upon their own members and their children. The evidence consistently revealed, however, that while

these Defendants in different ways regularly encouraged their patients to divulge tales of such brutal crimes, which thereby perpetuated their insurance-paid "treatments," Defendants never reported any of these supposed crimes to the police for investigation.

5. The Government initially had estimated that two months would be required for the trial. After two months, it became obvious that at least half a year would be required.

faith preparation for a prosecution of this magnitude.

After having considered the applications, responses of the Government, arguments and authorities presented by all parties, and after having considered the Court's view of the trial at close-hand for an unenviable period of five months, the Court finds that the position of the Government has not been shown to have been vexatious, frivolous, or in bad faith. Accordingly, it is

ORDERED that Applicant Mueck's Application is DENIED as procedurally barred because of his failure to demonstrate his eligibility for recovery of fees under the Hyde Amendment; and the Applications of Applicants Peterson, Seward, Keraga and Davis are all DENIED on the merits.

The Clerk shall notify all parties and provide them with a true copy of this Order.