behalf); *Caremore, Inc. v. NLRB*, 150 F.3d 628, 630 (6th Cir. 1998) (concluding that Caremore was litigating on its own behalf, and "the merits of the underlying case involved a bargaining unit consisting solely of Caremore employees"); *National Truck Equipment Ass. v. National Highway Traffic Safety Admin.*, 972 F.2d 669 (6th Cir. 1992) (aggregating member companies because trucking association was litigating on behalf of those companies).

I believe that aggregation is clearly appropriate in this case. The "parties" in the litigation comprised closely linked entities. Peng was the president and chief financial officer of Ranger USA. Peng owned fifty-two percent of Ranger Taiwan, approximately 100 percent of Ranger Shanghai, and 100 percent of Ranger USA. Ranger Taiwan owned almost 100 percent of Ranger Malaysia. Most importantly, unlike the *Caremore* and *Tri-State Steel* cases, Peng, Ranger and the other co-defendants essentially litigated as a bloc, rather than as independent entities. The very basis of the plea agreement was that Peng controlled each of the companies and their respective litigation decisions. Indeed, the plea agreement constituted an internal trade-off engineered by Peng—dismissing charges against him personally and Ranger in exchange for a guilty plea by Ranger USA, a plea of no contest by the unindicted co-conspirator (Ranger Shanghai), and Peng's agreement to pay Ranger USA's forfeiture amount personally. J.A. at 195-201. Ranger's argument that the "other Ranger companies' pleas" can not be imputed to Ranger is thus unpersuasive. Rather, aggregation is wholly appropriate.

At the onset of litigation, Ranger Malaysia had 485 employees, Ranger Shanghai had 185 employees, and Ranger had twelve employees. J.A. at 417. A Dun & Bradstreet report from November 1996 reported that the Ranger companies together had more than 800 plant workers. Because the aggregated entities have well over 500 employees, Ranger is ineligible to bring a Hyde Amendment claim.

*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0146P (6th Cir.)
File Name: 00a0146p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff-Appellant/*<br>*Cross-Appellee,*<br><br>*v.*<br><br>RANGER ELECTRONIC<br>COMMUNICATIONS, INC.,<br>*Defendant-Appellee/*<br>*Cross-Appellant.* | Nos. 98-2255/2322 |

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 96-00211—Richard A. Enslen, Chief District Judge.

Argued: January 26, 2000

Decided and Filed: April 24, 2000

Before: JONES, NORRIS, and SILER, Circuit Judges.

———————————

### COUNSEL

**ARGUED:** Joan E. Meyer, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellant. Daniel R. Gravelyn, WARNER, NORCROSS & JUDD, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Joan E.

Meyer, ASSISTANT UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellant.  Daniel R. Gravelyn, WARNER, NORCROSS & JUDD, Grand Rapids, Michigan, for Appellee.

SILER, J., delivered the opinion of the court, in which NORRIS, J., joined.  JONES, J. (pp. 14-20), delivered a separate concurring opinion.

---

**OPINION**

---

SILER, Circuit Judge.  The government appeals from an award of attorneys' fees and costs to Ranger Electronic Communications, Inc. ("Ranger") under the Hyde Amendment.  Ranger was indicted for violating 18 U.S.C. §§ 545 and 1956(a), importing illegal radio equipment and related money laundering charges.  The prosecution ended in a dismissal with prejudice of the illegal importation charges against Ranger and its primary officer, Jim Peng, but an associated corporation, Ranger USA, also owned by Peng, pled guilty to money laundering in violation of 18 U.S.C. § 1956(a)(2) and agreed to a criminal forfeiture of $990,000.000. Another sister corporation, Ranger Shanghai, pled no contest to one count of importing merchandise in violation of 18 U.S.C. § 545.

On appeal, the government argues that Ranger did not file a timely request for attorneys' fees and costs under the Hyde Amendment,[1] and that, even if timely filed, as a matter of

---

[1] Pub. L. No. 105-119, 111 Stat. 2440, 2519 (1997) (reprinted in 18 U.S.C. § 3006A, historical and statutory notes).  In its entirety, the Hyde Amendment provides:

> During fiscal year 1998 and in any fiscal year thereafter, the court, in any criminal case (other than a case in which the defendant is represented by assigned counsel paid for by the

B.

Ranger, however, must live with the consequences of being treated as one with the other co-defendants.  In particular, grouping the co-defendants into one entity means that Ranger was not an "eligible" party under § 2412(d).  For that reason, the award to Ranger must be reversed.

A party is only eligible to receive a Hyde award if it is:

> (i) an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed, or (ii) any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed . . . .

28 U.S.C. § 2412(d)(2)(B).  In this case, as in previous cases under the EAJA, the rather straightforward analysis of eligibility is complicated because several related companies and individuals, including subsidiaries, are the co-defendants. We are thus presented with the question of whether to aggregate the assets and employees of the related companies, or look independently at the particular entity bringing the Hyde Amendment claim.  Contrary to Ranger's argument, in analogous EAJA cases, this Court has not simply "adhered to the principle that corporations, even if 'related,' must be treated as independent entities."  Ranger's Br. at 27.  In fact, "a rule that would prevent aggregation under any circumstances would contravene the purpose of EAJA." *Tri-State Steel Construction Co. v. Herman*, 164 F.3d 973, 981 (6th Cir. 1999) (Gilman, J., concurring).  We therefore look beyond the formal structure of the litigating parties to inquire whether a purported independent entity is litigating on its own behalf, or on behalf of other, related entities as well. *See id.* at 979-80 (majority concluding that Tri-State, despite its close relationship with parent company, was litigating on its own

In my view, however, final judgment did not occur until May 19, 1998, the date of the sentencing order. In the criminal context, an order is final and appealable only after both conviction *and* sentencing. *See Flanagan v. United States*, 465 U.S. 259, 263 (1984); *United States v. One Juvenile Male*, 40 F.3d 841, 843 (6th Cir. 1994). Even when there is a plea agreement and a dismissal of charges, the dismissal of those charges is not final until the sentencing order is issued for the charges that remain. The rationale for this rule is that until the sentencing order issues, the possibility remains that the defendant will either breach or withdraw the plea, at which point the previously dismissed charges can be reinstated. In this case, Ranger USA was sentenced pursuant to the plea agreement on May 19, 1998. Prior to sentencing, Ranger USA could have negated the plea agreement by moving to withdraw the plea under Fed. R. Crim. Pro. 32(e) or by breaching one of the agreement's conditions. After such a withdrawal, the government would no longer have been bound by the dismissal of the charges against Ranger, and could re-prosecute those charges. J.A. at 199-200. For this reason, the May 19 sentencing order, not the earlier dismissal of the charges against Ranger, constituted the relevant final judgment.

This conclusion of course hinges on an underlying determination that the co-defendants in the case should be treated as one party. Technically, Ranger itself did not reach a plea agreement, only Ranger USA did. A strictly formalistic approach would therefore deem Ranger's filing of the Hyde award claim untimely. But because the co-defendants in this case were essentially litigating as one, *see infra*, and withdrawal or breach by Ranger USA before sentencing would have terminated the entire agreement, I believe that the sentencing order for Ranger USA constituted the final order with respect to all the parties in this case. Therefore, the May sentencing order of Ranger USA and Ranger Shanghai comprised the final order for the dismissal of charges against Ranger, and Ranger's filing on June 19 was timely.

law, there was no "vexatious, frivolous, or bad faith" prosecution as required under the Act. We hold the Hyde Amendment incorporates the Equal Access to Justice Act's[2] ("EAJA") thirty-day time limit for filing claims. As set forth below, we REVERSE for lack of jurisdiction.

## I. BACKGROUND

On December 19, 1996, Ranger, Ranger USA, and Peng were indicted for illegal importation of radio equipment in violation of 18 U.S.C. § 545. In addition, Ranger, Ranger USA, Peng and John Gouvion, the president of Ranger USA, were indicted for conspiracy to import and sell electronic devices in violation of 18 U.S.C. § 545. On March 27, 1997, a superseding indictment charged that Ranger, Ranger USA and Peng conspired to violate the customs laws in violation of 18 U.S.C. §§ 371 and 545; conspired to commit money

---

public) pending on or after the date of the enactment of this act (Nov. 26, 1997), may award to a prevailing party, other than the United States, a reasonable attorney's fee and other litigation expenses, where the court finds that the position of the United States was vexatious, frivolous or in bad faith, unless the court finds that special circumstances make such an award unjust. Such awards shall be granted pursuant to the procedures and limitations (but not the burden of proof) provided for an award under Title 28, U.S.C. § 2412. To determine whether or not to award fees under this section, the court, for good cause shown, may receive evidence ex parte and in camera (which shall include the submission of classified evidence or evidence that reveals or might reveal the identity of an informant or undercover agent or matters occurring before a grand jury) and evidence or testimony so received shall be kept under seal. Fees and other expenses awarded under this provision to a party shall be paid by the agency over which the party prevails from any funds made available to the agency by appropriation. No new appropriations shall be made as a result of this provision.

[2]The Equal Access to Justice Act, 28 U.S.C. § 2412 *et seq.*, authorizes the award of attorneys' fees and costs to private parties who prevail against the government in civil actions.

laundering in violation of 18 U.S.C. § 1956(h); brought merchandise into the United States contrary to law in violation of 18 U.S.C. § 545; and committed money laundering in violation of 18 U.S.C. § 1956(a)(1) and (a)(2)(A).

At the time of the indictments, Federal Communications Commission ("FCC") regulations required that Citizens Band ("CB") radios be "type accepted"[3] by the FCC before they could be distributed in this country. *See* 47 C.F.R. §§ 2.803 and 95.603. The government argued the radios that were specified in the indictments were "open" radios, which operate illegally in that they are not restricted to the forty CB bands, but operate on additional channels as well. Defendants argued the radios were "amateur" radios and thus imported under an exemption. The district court found that "[t]he radios in question were not type accepted by the FCC and would not have been type accepted because they broadcast on frequencies other than those approved by the FCC." *United States v. Ranger Electronic Communications, Inc.*, 22 F. Supp. 2d 667, 670 (W.D. Mich. 1998).

Ranger attempted to obtain exculpatory material from the government pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). In March 1997, defense counsel sought production of "all evidence known to the government which may be favorable to the defendant and material either to guilt or punishment." In April 1997, the government agreed "to provide all *Brady, Giglio*, and Jencks material on January 9, 1998 - three days before trial."

Defense counsel also tried to obtain evidence from the FCC to help prove that the regulations in question were vague. In June 1997, they made requests under the Freedom of

---

[3]Under the FCC regulations, radios cannot operate on the CB band unless express approval is obtained from the FCC to operate on the CB channels.

(1991). Because the thirty-day deadline is jurisdictional, *see Allen v. Secretary of Health & Human Serv.*, 781 F.2d 92, 94 (6th Cir. 1986), a district court is permitted to extend the deadline in only one instance: when a party has "performed an act which, if properly done, would have postponed the deadline for filing his application," and a court has affirmatively assured a party that the act was properly done. *United States v. Lindert*, No. 96-4321, 1998 WL 180519 at *4 (6th Cir. 1998) (unpublished opinion); *cf. Osterneck v. Ernst & Whitney*, 489 U.S. 169, 179 (1989) (concluding that an appellate court can forgive a party's failure to file a timely appeal "only where a party has performed an act which, if properly done, would postpone the deadline for filing his appeal and has received specific assurance by a judicial officer that this act has been properly done").

According to the majority, adherence to the thirty-day deadline dooms Ranger's award application. The case against Ranger ended on January 22, 1998, with Ranger USA's guilty plea and Ranger Taiwan's plea of no contest. The district court entered judgment terminating the criminal case against Ranger on February 3, 1998. The majority therefore finds that Ranger's filing on June 11, 1998 came well after the thirty-day window had closed.[1]

---

[1]The district court circumvented this bar to Ranger's application by carving out an "equitable tolling" exception to this jurisdictional requirement, allowing a "limited extension of the application period" in a situation where the government has concealed exculpatory evidence. *United States v. Ranger Electronic Communications, Inc.*, 22 F.Supp.2d 667, 675 (W.D. Mich. 1998). This was error for two reasons. Most seriously, the court's tolling defied precedent that courts can not extend a jurisdictional deadline except in the narrow circumstance described *supra*, which was not present in this case. Second, even assuming *arguendo* that some form of equitable tolling is permissible, because Ranger filed its Hyde Amendment claim 30 days after it had received the FOIA documents, the district court's extension of time into June was unreasonable.

tasked with showing that the government's "position" was "vexatious, frivolous, or in bad faith." *See id.* at 1300-02. Still, the Hyde Amendment's origin as a replica of § 2412(d) provides additional support for applying the procedures of § 2412(d). In sum, I agree with the majority that the Hyde Amendment requires a criminal defendant to meet the limitations and procedural requirements of § 2412(d).

## II.

I believe that Ranger failed to meet the requirements under § 2412(d), but not for the reason articulated by the majority. While Ranger filed its application for an award in a timely manner, it did not meet the eligibility criterion of having not more than 500 employees.

## A.

Unlike the majority, I believe that Ranger satisfied the thirty-day deadline to file for an award of attorney's fees. Section 2412(d)(1)(B) requires that

> [a] party seeking an award of fees and other expenses shall, *within thirty days of final judgment in the action*, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed.

28 U.S.C. § 2412(d)(1)(B) (emphasis added). The EAJA defines a final judgment as "a judgment that is final and not appealable, and includes an order of settlement." 28 U.S.C. § 2412(d)(2)(G); *see Buck v. Secretary of Health and Human Serv.*, 923 F.2d 1200, 1202 (6th Cir. 1991). The thirty-day clock begins to run after the time to appeal the final judgment has expired. *See Melkonyan v. Sullivan*, 501 U.S. 89, 96

Information Act[4] ("FOIA") for documents that related to CB and amateur radios. On June 20 and August 8, 1997, the FCC declined to produce several of the requested documents on the grounds that they would "interfere with an ongoing criminal investigation."[5] The FCC arrived at this conclusion based at least in part on the recommendation of AUSA Daniel Mekaru, who, along with AUSA Mark Courtade, handled the Ranger prosecution.

In August 1997, the district court ruled that the FCC regulations regarding "open" radios were clear and unambiguous. On January 9, 1998, the court ruled the defendants could not attack the FCC regulations for being confusing, but they could present evidence that they were confused about the regulations and that they reasonably believed the radios were legal "amateur" radios and not illegal, non-type-accepted CB radios.

In early January 1998, the FCC advised the prosecutors it had discovered approximate 400 more documents responsive to the FOIA request. The prosecutors asked the FCC to immediately fax those documents that the FCC thought were important for the prosecutors to review. The prosecutors received the facsimiles on or about January 12, 1998. Among these selected documents were some of the e-mails attached to Ranger's Hyde motion. The prosecutors examined the facsimiles and concluded that they, like the FCC documents they had reviewed in July 1997, concerned only "modifiable" radios and contained no reference to "open" radios. In addition, they were created outside the time frame charged in the indictment. Thus, the prosecutors determined not to produce them. On the date the trial began, January 13, 1998,

---

[4] 5 U.S.C. § 552 *et seq.*

[5] The government contends the investigation referred to concerned inquiries into the defendants' attempts to circumvent the type acceptance requirements for "modifiable" radios, which were not the subject of the indictments.

AUSA Courtade told the defendants that he had received additional FCC documents which he had yet to review. The trial ended before the prosecutors completed their review of the FCC FOIA documents.

Ranger also attempted to defend the charges by pointing to suspicious bank records of Gouvion.[6] The defendants claimed that Gouvion, the former president of Ranger USA and a government witness, was embezzling money from Ranger USA. Defendants based this assumption on a wire transfer confirmation showing that Gouvion had a joint bank account with a customer of Ranger USA. In December 1997, the defendants subpoenaed the bank records of Gouvion from 1992 to January 15, 1998. The government's motion to quash the subpoena was denied by the court on January 16.

On January 14, one day after trial began, AUSA Mekaru asked Gouvion about the wire transfer. Gouvion stated the wire transfer was for the sale of a Rolex watch to the owner of Santa Fe, a company that did business with Ranger USA. AUSA Mekaru asked Gouvion if the loans were a pay-off or if Gouvion was skimming money from Ranger USA. Gouvion replied that the loans were legitimate.

On January 19, 1998, AUSA Mekaru met with Gouvion to prepare him for his testimony the following day. At this meeting, Gouvion admitted he lied about the sale of the Rolex watch. Instead, Gouvion declared he had borrowed money from Ranger USA and used the joint bank account with the customer to hide the money. Thus, the government learned of Gouvion's lie three days after the hearing on the motion to quash the subpoena for Gouvion's bank records and one day prior to Gouvion's testimony in court.

Gouvion testified for the government on January 20-21, 1998. On the second day of examination, he testified that the

---

[6] Gouvion pled guilty to accessory after the fact in importing illegal merchandise in violation of 18 U.S.C. § 545.

Amendment's clear directive to apply the EAJA's procedures and limitations. Moreover, as the majority reasons, § 2412(b) itself shows that Ranger's interpretation is circular, as that provision explicitly instructs courts to rely on either common law or the "terms of any statute which specifically provides for such an award" to determine the extent to which the United States is liable for an award. 28 U.S.C. § 2412(b). In other words, § 2412(b) tells courts to look elsewhere for procedural guidance.

In addition, the language and legislative history of the Hyde Amendment suggest that the Amendment was modeled precisely after § 2412(d), making the application of its procedures and limitations particularly appropriate. First, the Hyde Amendment and § 2412(d) mirror one another in that each provides fees when the "position" of the government is flawed. Second, the history of the Amendment evinces an even closer connection. To quote the Eleventh Circuit's description of the Amendment's legislative history:

> Hyde patterned his amendment after the Equal Access to Justice Act ("EAJA"), *see* 28 U.S.C. § 2412(d)(1)(A), which authorizes the award of attorneys' fees and costs to private parties who prevail against the government in civil actions unless the government establishes that its position was "substantially justified." *See* 143 Cong. Rec. H7786-04, H7791 (Sept. 24, 1997) (statement of Rep. Hyde). Thus, in its original form the Hyde Amendment would have allowed the award of attorney fees and costs to any federal criminal defendant who prevailed against the government, unless the government showed that its position in the prosecution had been "substantially justified."

*United States v. Gilbert*, 198 F.3d 1293, 1300 (11th Cir. 1999). After criticism by House members and the Department of Justice that the Amendment was too broad, the provision was altered in two ways: the burden of proof was placed on the party seeking the award, and that party was

———————————

## CONCURRENCE

———————————

NATHANIEL R. JONES, Circuit Judge, concurring. I concur with the majority's well-reasoned conclusion that the Hyde Amendment incorporated all the procedures and limitations of the EAJA, including § 2412(d), and that reversal is warranted because Ranger failed to meet those criteria.    Nevertheless, I disagree with the majority's determination that Ranger failed to file its application for a Hyde Award within thirty days of the final judgment. My conclusion instead rests on the fact that Ranger was not an eligible corporation under § 2412(d).

## I.

Looking closely at the language and history of the Hyde Amendment, I agree with the majority that by incorporating the EAJA's "procedures and limitations," the Hyde Amendment also adopted the restrictions set forth in § 2412(d). I find unpersuasive Ranger's argument that it can satisfy the procedural requirements of the Hyde Amendment only by complying with § 2412(b), which provides neither procedural guidance nor eligibility limitations. Ranger thus was required to file for fees within thirty days of a non-appealable final judgment and to meet the requirements for eligibility as defined under § 2412(d).

First, as the majority opines, the Government's reading is the only fair interpretation of the statutory language of the Hyde Amendment, which references all of § 2412 and not its specific provisions. There is nothing to suggest that the Hyde Amendment meant to allow a party merely to point to § 2412(b) to circumvent the requirements enumerated in § 2412(d). Indeed, § 2412(d) provides by far the most concrete procedures and limitations in all of § 2412. Without the thirty-day rule and the requirements of "eligibility," courts would be left directionless in trying to apply the Hyde

money in the joint bank account was for the unauthorized sale of refurbished radios owned by Ranger USA. On re-cross examination, defense counsel elicited testimony from Gouvion that he had lied and that the claimed personal loans were undocumented, carried no interest rate and had never been repaid in whole or in part.

On January 22, 1998, defense counsel argued the prosecutors had committed a *Brady* violation and the defense was entitled to a dismissal of the indictment. The district court found that the prosecutor intentionally failed to inform defense counsel prior to Gouvion's testimony that the story about the Rolex watch was a lie. The court concluded this was a *Brady* violation, but specifically found that the defense had not suffered any prejudice because they confronted Gouvion about the lie on re-cross examination. Additionally, defense counsel admitted he was not prejudiced. The court offered the defense a mistrial which the defense declined.

A plea agreement was reached shortly thereafter, so the case ended without a jury verdict. Under the plea agreement, charges against Peng and Ranger were dismissed while Ranger USA pleaded guilty and Ranger Shanghai, which had not been charged up to that time, pleaded no contest, with a $990,000.00 forfeiture.

The judgment terminating the criminal case against Ranger was entered on February 3, 1998. Ranger refused to withdraw its motion to obtain FCC documents under the FOIA, so it received on March 30, 1998, the documents pursuant to the request. However, it was not until June 9, 1998, that Ranger filed its motion for attorneys' fees and costs under the Hyde Amendment.    The district court recognized that the application for attorneys' fees and costs was not timely under 28 U.S.C. § 2412(d)(1)(B), which requires that the application for fees and other expenses be filed within thirty days of the final judgment. Therefore, the court tolled the thirty-day limitation until June 9, 1998, because the government had

concealed *Brady* materials in the FCC documents which were not produced until March 30.

The district court found the prosecution acted in bad faith in withholding *Brady* material from the defendant by failing to reveal to the defense the fact that Gouvion had lied to the prosecution about the sale of the Rolex watch, which he used as an excuse for the receipt of a wire money transfer that the defendants claim was a pay-off from a competitor. The court also found that the withholding of the FCC documents which were requested under the FOIA was a violation of *Brady*.

The court awarded Ranger $40,106.74 in attorneys' fees and expenses. In awarding attorneys' fees, the court concluded that Ranger was only entitled to recover fees incurred after January 9, 1998, "the date on which the United States promised disclosure of *Brady* materials but failed to make those disclosures."

## II. DISCUSSION

### A. *Standard of Review*

The Hyde Amendment provides that an award of attorneys' fees "shall be granted pursuant to the procedures and limitations (but not the burden of proof) provided for an award under Title 28, U.S.C. § 2412," the EAJA, to prevailing parties in criminal cases. Pub. L. No. 105-119, 111 Stat. 2440, 2519 (1997) (reprinted in 18 U.S.C. § 3006A, historical and statutory notes). Under the EAJA, an award or denial of attorneys' fees is reviewed for an abuse of discretion. *See Pierce v. Underwood*, 487 U.S. 552 (1988); *Damron v. Commissioner of Social Security*, 104 F.3d 853, 854 (6th Cir. 1997). The district court appeared to rely on sections 2412(b) and 2412(d) of the EAJA in determining whether Ranger had timely filed its application for fees. However, this court has ruled that the thirty-day EAJA time limit found in section 2412(d)(1)(B) is jurisdictional and cannot be waived. *See Peters v. Secretary of Health and*

day limitation. In addition, as this is a waiver of sovereign immunity, some limitations must be applicable to the filing of a claim.

Although one court reached the opposite conclusion, *see Holland*, 34 F. Supp.2d at 357-58 ("[h]ad Congress intended to limit an applicant's rights to those granted by section 2412(d), it could have said so... [t]here is no reason to believe the Hyde Amendment intended to confer lesser rights upon criminal defendants than the EAJA conferred upon civil litigants"), this construction does not give effect to the plain meaning of the Hyde Amendment nor the policy considerations behind it. Moreover, the *Holland* court admits that "the only procedural requirement in the EAJA is found in section 2412(d), which requires that parties must submit their application for fees within 30 days of final judgment in the predicate action." *Id.* at 358. There is no reason to believe that Congress did not intend this procedural requirement to apply to criminal cases via the Hyde Amendment.

Thus, Ranger did not timely file its application for attorneys' fees with the district court, as its June 9, 1998, application was more than thirty days after the final judgment in the case (the dismissal of Ranger on February 3, 1998) and more than thirty days after Ranger's receipt of the FCC e-mails on or about March 28 to April 2, 1998. Even if the date of the disclosure of the FOIA FCC documents was used as the date from which Ranger must comply with the thirty-day limitation of the EAJA, the attorneys' fees application was required to be filed at the latest on May 2, 1998. As the application was not filed until June 9, 1998, the district court lacked jurisdiction over Ranger's application.

REVERSED.

especially fatal to claims for attorney fees in criminal actions because the EAJA waiver of sovereign immunity as to other fee statutes and under the common law applies only to civil and not criminal actions. See 28 U.S.C. § 2412(b)." *Ranger Electronic Communications, Inc*., 22 F. Supp.2d at 674. The court dismissed with prejudice the charges against Peng and Ranger on February 3, 1998; Ranger received the FCC e-mails on or about March 30, 1998; and Ranger filed its motion for attorneys' fees on June 9, 1998. It decided:

> In order to give effect to Congress's purpose and words in awarding attorneys' fees in criminal cases involving "bad faith" where the United States conceals its bad faith until more than 30 days after entry of judgment, a further reasonable time period should be permitted for the filing of an application for attorney fees.... [T]he defendant was permitted under the statute a reasonable period of time to discover the Brady violation from the documents and to file its application for attorney fees under the EAJA. The Court determines that, as such, the application was timely filed.

*Id.* at 675. In the opinion granting the Hyde award to Ranger, the district court found that Ranger was a "prevailing party" within the meaning of section 2412(d)(2)(B). *See id.* at 676. In its second opinion specifically granting $40,106.74 to Ranger, the district court cited section 2412(b) as the applicable section for bad faith conduct and the section under which it was awarding fees.

We believe the correct interpretation of the procedures and limitations of the EAJA as incorporated in the Hyde Amendment includes the limitations of section 2412(d). Section 2412(b) directs the applicant to look for an independent statute which gives a remedy of attorneys' fees and expenses independent of the EAJA. As the Hyde Amendment incorporates the EAJA, it would be circular to go back to the Hyde Amendment to treat it as an independent statute giving the right to attorneys' fees without the thirty-

*Human Serv*., 934 F.2d 693 (6th Cir. 1991). In addition, this court reasoned:

> The thirty day time limitation contained in the EAJA is not simply a statute of limitations. It is a jurisdictional prerequisite to governmental liability.... The Equal Access to Justice Act significantly abridged the government's immunity from suits for attorneys' fees. As a waiver of sovereign immunity, the act must be strictly construed. Once the government agrees to allow such suits, "the terms of its consent to be sued in any court define that court's jurisdiction to entertain that suit." Courts have consistently held that a statutory time limit is an integral condition of the sovereign's consent. Compliance with that condition is a prerequisite to jurisdiction.

*Allen v. Secretary of Health & Human Services*, 781 F.2d 92, 94 (6th Cir. 1986) (internal quotation cite omitted). Thus, the EAJA time limit in section 2412(d) is jurisdictional, and rulings applying such limit are reviewed *de novo* by this court. *See United States v. Lindert*, 1998 WL 180519, at **3 (6th Cir. April 8, 1998) (unpublished opinion); *Brown v. Sullivan*, 916 F.2d 492, 494 (9th Cir. 1990) (issues concerning the proper interpretation of the EAJA are reviewed *de novo*).

B.   *The Hyde Amendment*

The Hyde Amendment provides that attorneys' fees may be awarded to a prevailing criminal defendant where "the court finds that the position of the United States was vexatious, frivolous, or in bad faith, unless the court finds that special circumstances make such an award unjust." Pub. L. No. 105-109, 111 Stat. 2440, 2519 (1997) (reprinted in 18 U.S.C. § 3006A, historical and statutory notes).[7] Thus, a successful

---

[7]In his original proposal, Representative Hyde simply extended the EAJA's standard for awards and the allocation of the burden of proof to successful federal criminal defendants. Thus, Hyde's version would have

criminal defendant must show that the government's position was "vexatious, frivolous, or in bad faith" and even then may not recover if there are special circumstances which make the award of fees unjust. As a threshold matter, a successful criminal defendant must comply with the "procedures and limitations" of the EAJA to ensure that his application is timely and properly filed.

One of the limiting provisions of the EAJA provides that claims for attorneys' fees must be filed within thirty days of a final judgment from which there is no appeal. *See* 28 U.S.C. §§ 2412(d)(1)(B) and (d)(2)(G) (1994). The defendants failed to file within this period of time. They argue this delay was due to the government's underlying failure to disclose materials, and they further argue that the Hyde Amendment permits a party to seek attorneys' fees and costs under section 2412(b) of the EAJA without satisfying the requirements of section 2412(d).

No circuit has yet determined the Hyde Amendment's incorporation of the procedures and limitations of the EAJA.[8] The district courts that have addressed this issue are split.

---

permitted recovery of attorneys' fees and costs to any prevailing criminal defendant, unless the government showed that its position in the prosecution had been "substantially justified." Additionally, the original version did not contain the language referring to disclosure and in camera review of evidence relevant to a Hyde Amendment claim. *See* 143 Cong. Rec. H7791 (daily ed. Sept. 24, 1997); 28 U.S.C. § 2412.

[8]The only circuit opinions issued thus far construe the time for appeal and whether the government's position was "vexatious, frivolous, or in bad faith." The Tenth Circuit, in *United States v. Robbins*, 179 F.3d 1268, 1270 (10th Cir. 1999), concluded that Fed. R. App. P. 4(b) applies and requires parties to "file a notice of appeal within the 10 days after the order appealed from is entered." Most recently, the Eleventh Circuit held that a criminal defendant was not eligible for a Hyde award based on the government's alleged withholding of exculpatory information from the grand jury where "the trial jury convicts with knowledge of that evidence." *United States v. Gilbert*, 198 F.3d 1293, 1304 (11th Cir. 1999).

Some conclude that the procedures and limitations of the EAJA are contained in 28 U.S.C. § 2412(d). *See United States v. Peterson*, 71 F. Supp.2d 695, 698 (S.D. Tex. 1999); *United States v. Gardner*, 23 F. Supp.2d 1283, 1289 (N.D. Okla. 1998). Section 2412(d) requires a party seeking an award to file a detailed application within thirty days of "final judgment." "Final judgment" is defined as a judgment that is "final and appealable, and includes an order of settlement." 28 U.S.C. §§ 2412(d)(1)(B) and (d)(2)(G). In its application, the party must show that it is the "prevailing party" and state the actual time expended and the rates at which fees and other expenses were calculated. § 2412(d)(1)(B). No award of attorneys' fees can be made in excess of $125 per hour unless the court finds that special factors are present. *See* § 2412(d)(2)(A). Finally, section 2412(d) defines a "party" as a corporation that, at the time the civil action was filed, had a net worth which did not exceed $7,000,000 and no more than 500 employees. *See* § 2412(d)(2)(B).

Another district court, however, has held that the procedural limitations set forth in section 2412(d) of the EAJA are not applicable if the prevailing party chooses to seek attorneys' fees under section (b) in applying for fees under the Hyde Amendment. *See United States v. Holland*, 34 F. Supp.2d 346, 358-59 (E.D. Va. 1999). Section 2412(b) of the EAJA provides for recovery of attorneys' fees and expenses by a prevailing party in any civil action brought by or against the United States "to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award." Section 2412(b) does not require a statutory filing deadline, specify requirements as to the contents of the fee application, limit the hourly rate permitted an attorney, nor provide a net worth ceiling that, if exceeded, disqualifies a prevailing party from eligibility for a fee award.

In this case, Ranger moved for an award under the Hyde Amendment without reference to the EAJA. The district court determined that "[the] jurisdictional limitation is